**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| In re:<br><br>CATHOLIC BISHOP OF NORTHERN ALASKA, an Alaska religious corporation sole,<br><br>　　　　　Debtor. | Case No. F08-00110-DMD<br>Chapter 11<br><br>**Filed On**<br>**11/26/08** |

**MEMORANDUM ON EMERGENCY MOTION FOR INTERIM**
**AND FINAL ORDER AUTHORIZING DIP FINANCING**

On November 18, 2008, debtor Catholic Bishop of Northern Alaska ("CBNA") filed an emergency motion for an order authorizing interim and final DIP financing under 11 U.S.C. § 364(c). CBNA seeks authority to enter a loan agreement with the Roman Catholic Bishop of Great Falls-Billings, Montana, the civil entity of the Diocese of Great Falls-Billings for the sum of $1,000,000.00. Interest on the loan will accrue at the rate of 7% per annum, and the loan term will be 20 years. The monthly payments on the loan will be $7,752.99, applied to principal and interest, but interest payments will be deferred until CBNA has obtained an order confirming a plan of reorganization. CBNA asks for immediate approval of interim financing in the sum of $300,000.00, with the balance of the loan to be approved after a further hearing.

　　　　　The Official Committee of Unsecured Creditors ("UCC") opposes the motion on a variety of grounds. It has presented a detailed and thorough listing of the many objections it has to the debtor's emergency motion. I cannot, in the time available, engage

in a detailed discussion or refutation of the UCC's opposition. I will, however, highlight some of the reasons that I do not find it persuasive.

The UCC alleges that financing under 11 U.S.C. § 364(c) can only be authorized if the court makes an explicit finding that the proposed financing is in the best interests of creditors. Section 364(c) provides:

> (c)  If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
>
> (1)  with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> (2)  secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3)  secured by a junior lien on property of the estate that is not otherwise subject to a lien.[1]

Nowhere in the text of § 364(c) is there any mention of a best interests of creditors test for financing. Obviously, it would be in the general interests of prepetition unsecured creditors, as well as the debtor, to have an unencumbered estate. That is not always possible, however. Congress has given debtors the right to encumber their assets in aid of the reorganization process. Congress had the ability to graft a "best interests of creditors test" into § 364, as it

---

[1] 11 U.S.C. § 364(c) (2008).

2

has done with several other Bankruptcy Code provisions,[2] but failed to do so. I am unaware of any Ninth Circuit authority that reads § 364 in the manner suggested by the UCC.

Further, assuming for the sake of argument that a "best interests of creditors" test did apply here, I think it is in the best interests of creditors, particularly at this stage of the chapter 11 process, to have an administratively solvent debtor in possession. The claim bar deadline is December 2, 2008, just days away. Resolution of several substantive issues in this case, such as the liquidation of the tort claims, their treatment under the plan, and the amount of insurance coverage for such claims, have been placed on "hold" until after this deadline elapsed.[3] Disputes regarding what is property of the estate also remain. It will benefit all parties if CBNA has the financial ability, after the claim bar date has elapsed, to deal with these issues head on. It makes no sense to cut off the debtor's ability to function when we are just reaching the home stretch of this reorganization.

The UCC alleges that the loan is part of a plan by the debtor to shield assets from creditors. I don't regard CBNA's financing request as a plan to shield assets. Rather, the contrary is true. The debtor is creating liquidity in the hope of bringing this case to a

---

[2] *See, e.g.,* 11 U.S.C. § 1104(a)(2) [trustee may be appointed in chapter 11 case if such appointment is in the interests of creditors], § 1112(b)(1) [no dismissal or conversion of chapter 11 case where unusual circumstances establish that it would not be in the best interests of creditors and the estate], § 1307(c) [court may convert or dismiss chapter 13 case for cause, whichever is in the best interests of creditors and the estate].

[3] *See* Memorandum Regarding Status and Scheduling Conference, entered May 19, 2008 (Docket No. 160).

3

successful close. It is not "shielding" the real property it proposes to give as security for the loan; this property will be encumbered with substantial debt.

The UCC says the debtor doesn't need a loan because it has other sources of funds. The UCC wants the debtor to tap a $16 million Endowment rather than borrow against estate real property. Assuming the Endowment is still worth $16 million, which given the recent bear market is unlikely, it is not that simple. The issue of whether CBNA can tap the Endowment is wrapped up into the larger issues which have been presented in this case, including the trust status of any real or personal property held in the name of CBNA, whether the parishes have a separate legal existence, and whether Canon law or civil law governs such determinations.[4] The parties have unsuccessfully engaged in mediation regarding these issues, and the UCC is now free to pursue remedies available to it through litigation.[5] I have previously noted that such issues are most appropriately considered in the context of an adversary proceeding.[6] These are substantive issues. It is beyond the scope of this proceeding to consider them.

Moreover, as I noted in my earlier decision regarding the construction loans, the debtor's most valuable asset is the goodwill of its thousands of donors, who contribute

---

[4] Memorandum on Debtor's Emergency Mot. for Authority to use Restricted and Unrestricted Funds for Certain Construction Projects, entered Apr. 18, 2008 (Docket No. 126).

[5] Scheduling Order, entered Aug. 14, 2008 (Docket No. 253).

[6] Memorandum on Debtor's Emergency Motion for Authority to use Restricted and Unrestricted Funds (Docket No. 126), at p. 17.

4

more than $4 million annually to sustain it.[7]  This is CBNA's "high season," as far as donations are concerned; about half of all donations CBNA receives come in over the holiday season from November through February.  To arbitrarily invade the principal of the Endowment at this point in time, when other financing alternatives are available, makes no sense to me.  It would dramatically damage the goodwill CBNA has cultivated and ultimately destroy the debtor, rendering any plan impossible of performance.  And if, in the end, the UCC is vindicated in its position regarding property of the estate, there would be no real benefit to creditors by such a contrivance.  A major asset will have been lost.

        The UCC argues that the debtor hasn't demonstrated how it will repay the loan.  At this stage of the proceeding, it does not have to.  CBNA's plan will have to provide for payment of the loan along with the other obligations of the debtor, including the UCC claims.  No payments are required on the loan until a plan is confirmed.  And the ongoing monthly payment obligation which would be required on the loan, $7,752.99, seems to be one which could fit within CBNA's budget.

        The UCC contends that the debtor should borrow from a custodial fund held by Catholic Trust of Northern Alaska rather than taking out a secured loan.  They note that this fund was created by a prepetition transfer from the debtor of $2.1 million.  This again raises one of the ultimate issues in this case.  If the UCC feels that this fund should be part of the estate, I suggest they bring an appropriate adversary action to determine the proper

---

[7] *Id.* at pp. 14-15.

5

ownership of this account, as well as the Endowment. There is nothing in § 364 which requires a debtor to avoid prepetition transfers prior to obtaining a secured loan. In fact, such a requirement would significantly impair any debtor in possession's ability to operate, since it would preclude any financing arrangements until prepetition transfers had first been recovered.

In instances where unsecured credit cannot be obtained, § 364(c) permits the court to authorize a debtor in possession to obtain a loan secured by otherwise unencumbered property.[8] The Rev. Mr. Bowder's testimony established that CBNA has been searching for financing to cover chapter 11 administrative expenses since just after its petition was filed. No viable unsecured financing options were offered it.[9] At this point, CBNA seeks approval of interim financing of $300,000.00. These funds will essentially keep CBNA afloat until the court can consider whether the remainder of the loan should be authorized. In addition to chapter 11 administrative expenses, CBNA is facing higher fuel costs through the winter months. CBNA has also felt the pain from the dramatic downturn in the market.

I conclude that the debtor's request for interim financing of $300,000.00 should be granted. As to the remainder of the loan, the court will give the parties priority for a December hearing. Mr. Nye will contact Mr. Stang to arrange for a convenient hearing date.

---

[8] 11 U.S.C. § 364(c)(2).

[9] The only unsecured financing which was offered required full repayment in 5 years. CBNA rejected this option because the annual debt burden on the loan would eat up too much of its yearly budget.

6

DATED: November 26, 2008

                                            BY THE COURT

                                            <u>/s/ Donald MacDonald IV</u>
                                            DONALD MacDONALD IV
                                            United States Bankruptcy Judge

Serve:  K. Nye, Esq.
         S. Boswell, Esq.
         M. Mills, Esq.
         D. Bundy, Esq.
         J. Stang, Esq.
         M. Pompeo, Esq.
         H. Rafatjoo, Esq.
         F. Elsaesser, Esq.
         K. Roosa, Esq.
         ECF Participants
         U. S. Trustee

         11/26/08