# EXHIBIT "1"

Susan G. Boswell, Esq. (AZ #004791; Admitted Pro Hac Vice)
Kasey C. Nye, Esq. (AZ#020610; Admitted Pro Hac Vice)
Lori L. Winkelman, Esq. (AZ#021400; Admitted Pro Hac Vice)
QUARLES & BRADY LLP
One South Church Avenue
Suite 1700
Tucson, Arizona 85701-1621
Telephone:    (520) 770-8700
Facsimile:    (520) 770-2222
Email: susan.boswell@quarles.com
Email: kasey.nye@quarles.com
Email: lori.winkelman@quarles.com

Michael R. Mills, Esq. (AK #891174)
DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
Telephone:    (907) 276-4557
Facsimile:    (907) 276-4152
Email: mills.mike@dorsey.com

Attorneys for Debtor, Catholic Bishop of Northern Alaska

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| CATHOLIC BISHOP OF NORTHERN ALASKA, an Alaska religious corporation sole,<br><br>    Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 08-00110-DMD<br><br>(Chapter 11) |

### DEBTOR'S AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' THIRD AMENDED AND RESTATED JOINT PLAN OF REORGANIZATION FOR THE CATHOLIC BISHOP OF NORTHERN ALASKA

December 16, 2009

Fairbanks, Alaska

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-
1621

QB\9364840.1

# TABLE OF CONTENTS

ARTICLE 1  INTRODUCTION ..................................................................1

ARTICLE 2  DEFINITIONS ......................................................................1

2.1  Scope Of Definitions.................................................................1

2.2  Administrative Claim................................................................2

2.3  Administrative Claims Bar Date...............................................2

2.4  Allowed....................................................................................3

2.5  Annuities..................................................................................3

2.6  Annuity Secured Claims...........................................................3

2.7  Arbitration Award....................................................................3

2.8  Assets.......................................................................................3

2.   Avoidance Actions...................................................................4

2.10  Ballot.......................................................................................4

2.11  Bankruptcy Code......................................................................4

2.12  Bankruptcy Court or Court.......................................................4

2.13  Bankruptcy Rules.....................................................................4

2.14  Bar Date...................................................................................4

2.15  Bar Date Order.........................................................................4

2.16  Binding Arbitration Process.....................................................5

2.17  Bishop......................................................................................5

2.18  Business Day............................................................................5

2.19  Canon Law...............................................................................5

2.20  Cash.........................................................................................5

2.21  CBNA Real Property................................................................5

2.22  Channeled Claims....................................................................5

2.23  Chapter 11 Professionals.........................................................5

**Quarles & Brady LLP**
One South Church Ave.
Suite 1700
Tucson, Arizona  85701-
1621

TABLE OF CONTENTS
(continued)

| 2.24 | Claim Allowance Agreement | 5 |
|------|---------------------------|---|
| 2.25 | Claim Objection Deadline | 6 |
| 2.26 | Claim Payment Date | 6 |
| 2.27 | Class | 6 |
| 2.28 | Co-Defendants | 6 |
| 2.29 | Committee | 6 |
| 2.30 | Committee's Professionals | 6 |
| 2.31 | Confirmation Date | 7 |
| 2.32 | Confirmation Hearing | 7 |
| 2.33 | Confirmation Order | 7 |
| 2.34 | Continental | 8 |
| 2.35 | Continental Claims | 8 |
| 2.36 | Contingent | 9 |
| 2.37 | Contribution Actions | 9 |
| 2.38 | Contribution Claims | 9 |
| 2.39 | Convenience Tort Claim | 9 |
| 2.40 | Convenience Tort Claimant | 9 |
| 2.41 | CTNA | 9 |
| 2.42 | Custom Questionnaire | 9 |
| 2.43 | Debtor or CBNA | 9 |
| 2.44 | Debtor's Professionals | 9 |
| 2.45 | Diocese | 10 |
| 2.46 | Diocesan Bishop | 10 |
| 2.47 | Disallowed | 10 |
| 2.48 | Disclosure Statement | 10 |

**Quarles & Brady LLP**
One South Church Ave.
Suite 1700
Tucson, Arizona  85701-
1621

TABLE OF CONTENTS
(continued)

| | | |
|---|---|---|
| 2.49 | Disputed Claim | 11 |
| 2.50 | Disputed Claims Reserve | 11 |
| 2.51 | District Court | 11 |
| 2.52 | Effective Date | 11 |
| 2.53 | Endowment | 12 |
| 2.54 | Endowment Documents | 12 |
| 2.55 | Estate | 12 |
| 2.56 | Estimated Amount | 12 |
| 2.57 | Excluded Property | 12 |
| 2.58 | Executory Contract | 13 |
| 2.59 | Final Order | 13 |
| 2.60 | Fund | 13 |
| 2.61 | Future Claims Representative | 14 |
| 2.62 | Future Claims Representative's Professionals | 14 |
| 2.63 | Future Claims Reserve | 15 |
| 2.64 | Future Tort Claim Litigation Process | 15 |
| 2.65 | Future Tort Claim Proof of Claim | 15 |
| 2.66 | Future Tort Claim Settlement Process | 15 |
| 2.67 | Future Tort Claim Litigation Process | 15 |
| 2.65 | Future Tort Claim Proof of Claim | 15 |
| 2.66 | Future Tort Claim Settlement Process | 15 |
| 2.67 | Future Tort Claimant | 15 |
| 2.68 | Future Tort Claims | 15 |
| 2.69 | General Unsecured Convenience Claim | 16 |
| 2.70 | General Unsecured Claim | 16 |

**Quarles & Brady LLP**
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-
1621

TABLE OF CONTENTS
(continued)

| | | |
|---|---|---|
| 2.71 | Great Divide Candidate Insurers | 17 |
| 2.72 | Great Falls | 17 |
| 2.73 | Great Falls DIP Loan | 17 |
| 2.74 | Great Falls Promissory Note | 17 |
| 2.75 | Great Falls Secured Claim | 17 |
| 2.76 | Insurance Actions | 17 |
| 2.77 | Insurance Adversary | 18 |
| 2.78 | Insurance and Benefit Claims | 18 |
| 2.79 | Insurance Company | 18 |
| 2.80 | Insurance Coverage | 18 |
| 2.81 | Insurance Policy | 19 |
| 2.82 | Jesuits | 19 |
| 2.83 | Jesuit Fault Allocation Claims | 19 |
| 2.84 | Jesuit Safeco Insurance Policies Claims | 19 |
| 2.85 | Jesuit Unsecured Claims | 19 |
| 2.86 | Litigation Protocol | 19 |
| 2.87 | Litigation Reserve | 19 |
| 2.88 | Litigation Tort Claim | 20 |
| 2.89 | Litigation Tort Claimant | 20 |
| 2.90 | Litigation Trust | 20 |
| 2.91 | Litigation Trust Agreement | 21 |
| 2.92 | Monroe Foundation | 21 |
| 2.93 | Monroe Foundation Settlement | 21 |
| 2.94 | Monroe Foundation Settlement Agreement | 21 |
| 2.95 | Other Secured Claims | 22 |

**Quarles & Brady LLP**
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-
1621

TABLE OF CONTENTS
(continued)

2.96    Other Tort and Employee Claims ...................................................................22

2.97    Parish..................................................................................................................22

2.98    Parish Church.....................................................................................................22

2.99    Parish Real Property ..........................................................................................22

2.100   Parish Settlement ...............................................................................................23

2.101   Parish Settlement Agreement.............................................................................23

2.102   Participating Third Parties .................................................................................23

2.103   Parties.................................................................................................................23

2.104   Penalty Claims ...................................................................................................24

2.105   Petition Date.......................................................................................................24

2.106   Pilgrim Springs Auction ....................................................................................24

2.107   Pilgrim Springs Claims ......................................................................................24

2.108   Pilgrim Springs Property....................................................................................24

2.109   Pilgrim Springs Setoff Claims ...........................................................................25

2.110   Plan .....................................................................................................................25

2.111   Plan Documents ..................................................................................................25

2.112   Post-Effective Date Secured Tax Claims............................................................25

2.113   Preliminary Distribution ....................................................................................25

2.114   Prepetition Date Secured Tax Claims.................................................................25

2.115   Priority Employee Unsecured Claim .................................................................26

2.116   Priority Tax Claim .............................................................................................26

2.117   Priority Unsecured Claim ..................................................................................26

2.118   Pro Rata..............................................................................................................26

2.119   Professional Charges..........................................................................................26

2.120   Proof of Claim....................................................................................................26

**Quarles & Brady LLP**
One South Church Ave.
Suite 1700
Tucson, Arizona  85701-
1621

TABLE OF CONTENTS
(continued)

2.121   Property Tax Administrative Claim .................................................26

2.122   Property Tax Claims ........................................................................26

2.123   Property Tax Claims Proration .......................................................26

2.124   Qualified Counsel ...........................................................................27

2.125   Qualified Counsel Fees ...................................................................27

2.126   Released Parties ..............................................................................27

2.127   Reorganization Case .......................................................................27

2.128   Reorganized Debtor ........................................................................28

2.129   Retained Claims ..............................................................................28

2.130   Secured Claim .................................................................................28

2.131   Secured Tax Claim ..........................................................................28

2.132   Settlement Amount ..........................................................................29

2.133   Settlement Trust ..............................................................................29

2.134   Settlement Trust Agreement ...........................................................30

2.135   Settlement Trustee. ..........................................................................30

2.136   Settling Insurers ..............................................................................30

2.137   Settling Parties ................................................................................31

2.138   Settling Tort Claimant .....................................................................31

2.139   Settling Tort Claim. .........................................................................31

2.140   Special Appeal .................................................................................31

2.141   Special Arbitrator ............................................................................32

2.142   Tort Claim .......................................................................................32

2.143   Tort Claimant ..................................................................................32

2.144   Trust Administrative Expense Reserve ...........................................33

2.145   UAF License ....................................................................................33

**Quarles & Brady LLP**
One South Church Ave.
Suite 1700
Tucson, Arizona  85701-
1621

TABLE OF CONTENTS
(continued)

2.146   Uniform Questionnare ............................................................33

2.147   Unsecured Claim....................................................................33

ARTICLE 3  UNCLASSIFIED CLAIMS ...................................................34

3.1      Administrative Claims ...........................................................34

3.2      Priority Unsecured Claims .....................................................34

3.3      Priority Tax Claims ...............................................................34

3.4      Elimination of Claim.............................................................34

ARTICLE 4  CLASSIFICATION OF CLAIMS ..........................................35

4.1      Classification.........................................................................35

4.2      Classes..................................................................................35

ARTICLE 5  TREATMENT OF CLASSES OF CLAIMS WHICH ARE NOT IMPAIRED
UNDER THE PLAN...............................................................36

5.1      Priority Employee Unsecured Claims – Class 1 ......................36

5.2      Annuity Secured Claims – Class 5..........................................36

5.3      Insurance and Benefit Claims – Class 11 ................................36

ARTICLE 6  TREATMENT OF CLASS 2 CLAIMS (PREPETITION DATE SECURED TAX
CLAIMS) .............................................................................37

6.1      Distribution...........................................................................37

6.2      Disputed Claims.....................................................................37

6.3      Retention of Liens..................................................................38

6.4      Other Claims..........................................................................38

ARTICLE 7  TREATMENT OF CLASS 3 CLAIMS (OTHER SECURED CLAIMS) .............38

7.1      Distribution...........................................................................38

7.2      Retention of Liens..................................................................38

ARTICLE 8  TREATMENT OF CLASS 4 CLAIMS (GREAT FALLS SECURED CLAIM) ...38

8.1      Distribution ...........................................................................39

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona  85701-
1621

TABLE OF CONTENTS
(continued)

8.2     Impairment......................................................................................................39

ARTICLE 9  TREATMENT OF CLASS 6 CLAIMS (GENERAL UNSECURED
CONVENIENCE CLAIMS)..................................................................................39

9.1     Distribution.....................................................................................................39

9.2     Interest.............................................................................................................40

9.3     Impairment......................................................................................................40

ARTICLE 10  TREATMENT OF CLASS 7 CLAIMS (JESUIT UNSECURED CLAIMS).......40

10.1    Distribution.....................................................................................................40

10.2    Setoff Prior to Assignment or Distribution....................................................40

10.3    Interest.............................................................................................................41

10.4    Impairment......................................................................................................41

ARTICLE 11  TREATMENT OF CLASS 8 CLAIMS (GENERAL UNSECURED CLAIMS) .41

11.1    Distribution.....................................................................................................41

11.2    Interest.............................................................................................................41

11.3    Impairment......................................................................................................41

ARTICLE 12  TREATMENT OF CLASS 9 CLAIMS (OTHER TORT AND EMPLOYEE
CLAIMS).............................................................................................................41

12.1    Distribution.....................................................................................................41

12.2    Impairment......................................................................................................41

ARTICLE 13  TREATMENT OF CLASS 10 CLAIMS (TORT CLAIMS AND FUTURE TORT
CLAIMS).............................................................................................................42

13.1    Subclasses of Tort Claims..............................................................................42

13.2    Settlement and Litigation Trust Sole Source of Recovery for Tort Claims;
Allocation of Funding.....................................................................................42

13.3    Treatment of Convenience Tort Claims..........................................................43

13.4    Treatment of Settling Tort Claims..................................................................43

13.5    Treatment of Litigation Tort Claimants..........................................................47

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona  85701-
1621

TABLE OF CONTENTS
(continued)

13.6    Treatment of Future Tort Claims ........................................................................48

13.7    General .............................................................................................................51

13.8    Treatment of Attorneys' Fees of Tort Claimants and Future Tort Claimants............51

13.9    Treatment of Punitive Damages............................................................................52

13.10   Impairment .........................................................................................................52

ARTICLE 14  TREATMENT OF CLASS 12 CLAIMS (CONTINENTAL CLAIMS)...............52

14.1    Distribution ........................................................................................................52

14.2    Discharge ...........................................................................................................52

14.3    Impairment .........................................................................................................52

ARTICLE 15  TREATMENT OF CLASS 13 CLAIMS (PILGRIM SPRINGS CLAIMS) .........52

15.1    Distribution ........................................................................................................52

15.2    Impairment .........................................................................................................53

ARTICLE 16  TREATMENT OF CLASS 14 CLAIMS (PENALTY CLAIMS).......................53

16.1    Distribution ........................................................................................................53

16.2    Impairment .........................................................................................................53

ARTICLE 17  MEANS OF IMPLEMENTATION OF THE PLAN .........................................53

17.1    Funding the Fund ...............................................................................................53

17.2    Asset Sale to the Endowment ..............................................................................53

17.3    Pilgrim Springs Auction .....................................................................................54

17.4    Harding Lake Sale...............................................................................................54

17.5    Assignment of Property to Trustee of Settlement Trust .........................................54

17.6    Formation of Settlement Trust and Litigation Trust ...............................................54

17.7    Special Arbitrator and Litigation Trustee and Settlement Trustee Assume
        Responsibility .....................................................................................................55

17.8    Funding on the Effective Date ..............................................................................55

17.9    Assignment of Claims Against Great Divide Candidate Insurers ............................56

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona  85701-
1621

ix

TABLE OF CONTENTS
(continued)

17.10   Funding After the Effective Date..................................................................56

17.11   Payments to the Fund After the Effective Date ...........................................57

17.12   Non-Monetary Commitment to Healing and Reconciliation.......................57

17.13   Procedure for Determination of Claims Other Than Tort Claims or Future Tort Claims ...................................................................................60

17.14   Payments Effective Upon Tender ................................................................61

17.15   Preservation of Debtor's Claims, Demands, and Causes of Action ............62

17.16   Special Provisions Governing Unimpaired Claims .....................................63

17.17   Operative Documents....................................................................................63

17.18   Return of Deposits .......................................................................................63

17.19   Administrative Claims Bar Date ..................................................................63

17.20   Delivery of Distributions .............................................................................64

ARTICLE 18   ADMINISTRATION OF THE SETTLEMENT TRUST, SETTLING TORT CLAIMS AND FUTURE TORT CLAIMS........................................65

18.1   Binding Arbitration Process..........................................................................65

18.2   Procedure for Filing Future Tort Claims ......................................................69

18.3   Special Provisions Governing the Administrative Costs for the Binding Arbitration...............................................................................70

18.4   Wind down of the Future Claims Reserve ....................................................70

ARTICLE 19   TREATMENT OF EXECUTORY CONTRACTS ...............................71

19.1   Assumption and Rejection of Executory Contracts ......................................71

19.2   Claims Based on Rejection of Executory Contracts .....................................72

19.3   Indemnification of Members, Managers, Officers, and Employees .............72

ARTICLE 20   CONDITIONS TO EFFECTIVE DATE ...............................................73

20.1   Conditions To Occurrence Of Effective Date...............................................73

20.2   Debtor's Obligations to Cause Effective Date to Occur ...............................73

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona  85701-
1621

TABLE OF CONTENTS
(continued)

20.3    Waiver of Conditions ................................................................74

20.4    Effect of Non-occurrence of Conditions ................................................74

20.5    Merger; Choice of Law ................................................................74

20.6    Other Obligations of the Reorganized Debtor ................................................75

ARTICLE 21  EFFECTS OF CONFIRMATION ................................................................75

21.1    Discharge ................................................................75

21.2    Vesting ................................................................76

21.3    Channeled Claims ................................................................76

21.4    Exculpation and Limitation of Liability ................................................77

21.5    Permanent Injunction Against Prosecution of Released and Channeled Claims .........77

ARTICLE 22  SETTLEMENT WITH THE PARISH CHURCHES, THE MONROE
FOUNDATION AND THE CATHOLIC TRUST OF NORTHERN ALASKA ....................79

ARTICLE 23  MODIFICATION OF PLAN ................................................................79

ARTICLE 24  RETENTION OF JURISDICTION ................................................................80

24.1    In General ................................................................80

24.2    Tort Claims and Future Claims ................................................................80

24.3    Plan Disputes and Enforcement ................................................................80

24.4    Further Orders ................................................................81

24.5    Retained Claims ................................................................81

24.6    Issuance of Process ................................................................81

24.7    Governmental Units or Regulatory Agencies ................................................81

24.8    Final Decree ................................................................82

24.9    Appeals ................................................................82

24.10   Executory Contracts ................................................................82

24.11   Claims ................................................................82

24.12   Modification of the Plan ................................................................83

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona  85701-
1621

TABLE OF CONTENTS
(continued)

24.13   Failure of Court to Exercise Jurisdiction ................................................................83

ARTICLE 25  AMENDMENT TO ENDOWMENT ........................................................83

25.1   Amendment ...........................................................................................................83

25.2   Limitation on Authority ........................................................................................84

25.3   Incorporation into Confirmation Order .................................................................84

25.4   Implementation of Amendment .............................................................................84

ARTICLE 26  REORGANIZATION OF CBNA ...............................................................85

26.1   Continued Corporate Existence and Operation of the Reorganized Debtor ...............85

26.2   Management of Reorganized Debtor ......................................................................85

26.3   Reorganization of Parishes ....................................................................................85

ARTICLE 27  GENERAL PROVISIONS .........................................................................86

27.1   Extension Of Payment Dates .................................................................................86

27.2   Notices ...................................................................................................................86

27.3   Closing of the Case ................................................................................................86

27.4   Interest ...................................................................................................................86

27.5   Additional Assurances ...........................................................................................86

27.6   Confirmation By Nonacceptance Method ..............................................................86

27.7   Withdrawal Of Plan ...............................................................................................86

27.8   Severability And Reformation ...............................................................................86

27.9   Prohibition Against Prepayment Penalties .............................................................87

27.10  Fractional Dollars ..................................................................................................87

27.11  Payment Of Statutory Fees And Filing of Quarterly Reports ................................87

27.12  Reservation of Rights .............................................................................................87

27.13  No Professional Fees or Expenses .........................................................................88

27.14  Dissolution of Committee ......................................................................................88

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona  85701-
1621

TABLE OF CONTENTS
(continued)

27.15   Headings ................................................................................................88

27.16   Section 1146 Exemption .......................................................................88

27.17   Successors and Assigns.........................................................................88

**Quarles & Brady LLP**
One South Church Ave.
Suite 1700
Tucson, Arizona  85701-
1621

# ARTICLE 1

## INTRODUCTION

The Catholic Bishop of Northern Alaska, an Alaska religious corporation sole, the Debtor and debtor-in-possession in the above-captioned Chapter 11 reorganization case, and the Official Committee of Unsecured Creditors, propose the following Third Amended and Restated Joint Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code. For purposes hereof, any term used in an initially capitalized form in the Plan will have the defined meaning ascribed to it in either Bankruptcy Code § 101 or Article 2 hereof unless the context otherwise requires.

ALL CREDITORS ARE ENCOURAGED TO CONSULT THE DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. AMONG OTHER INFORMATION, THE DISCLOSURE STATEMENT CONTAINS DISCUSSIONS OF THE DEBTOR, THE HISTORICAL BACKGROUND OF THE REORGANIZATION CASE AND THE PREPETITION PERIOD, THE PROJECTIONS GERMANE TO THE PLAN AND THE POST-CONFIRMATION OPERATIONS OF THE DEBTOR AND THE REORGANIZED DEBTOR, AND A SUMMARY AND ANALYSIS OF THE PLAN. NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT OR BY THE BANKRUPTCY CODE FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

The Court has scheduled the Confirmation Hearing on January 25 and 26, 2010.

# ARTICLE 2

## DEFINITIONS

2.1     Scope Of Definitions. For purposes of the Plan, and except as expressly provided otherwise herein or unless the context otherwise requires, all of the defined terms stated in Article 2 will have the meanings hereinafter stated. For purposes of the Plan and such defined terms, the singular and plural uses of such defined terms and the conjunctive and disjunctive uses

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

THIRD AMENDED JOINT PLAN OF REORGANIZATION

In re *Catholic Bishop of Northern Alaska,* Case No. 08-00110-DMD

QB\9385065.5

thereof will be fungible and interchangeable (unless the context otherwise requires); and the defined terms will include masculine, feminine, and neuter genders. The words "hereof," "hereto," "herein," and "hereunder" and words of similar import, when used in the Plan, will refer to the Plan as a whole. The defined terms stated in Article 2 also are substantive terms of the Plan, and Article 2 will be deemed incorporated throughout the rest of the Plan to convey the substantive provisions included in the defined terms. Any term used in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules will have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules. Unless otherwise specified, all section, article, and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan, as the same may be amended, waived, or modified from time to time. The headings and captions of the Plan (including the headings of the defined terms), are for convenience of reference only and will not limit or otherwise affect the provisions hereof. Accordingly, the defined terms are as follows:

2.2    <u>Administrative Claim</u> means (a) every cost or expense of administration of the Reorganization Case which is allowable pursuant to Bankruptcy Code § 503, including any actual and necessary postpetition expenses of preserving the Estate; (b) any actual and necessary postpetition expenses of operating CBNA; (c) all Professional Charges approved by the Bankruptcy Court pursuant to interim and final allowances in accordance with Bankruptcy Code §§ 330, 331, and 503(b); (d) every Property Tax Administrative Claim; and (e) all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

2.3    <u>Administrative Claims Bar Date</u> means the deadline for holders of Administrative Claims to file motions to allow administrative claims and the deadline for the Debtor's Professionals, the Committee's Professionals, the Future Claims Representative and the Future Claims Representative Professionals to file final fee applications and will occur forty-five (45) days after the Confirmation Date, unless any such requirement for filing final fee applications is waived pursuant to Court order.

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

THIRD AMENDED JOINT PLAN OF REORGANIZATION

In re *Catholic Bishop of Northern Alaska,* Case No. 08-00110-DMD

QB\9385065.5

2.4    Allowed means with respect to any Claim or Administrative Claim allowance for purposes of distribution pursuant to Bankruptcy Code §§ 502 or 503. A Claim or Administrative Claim may become an Allowed Claim by operation of law if it was scheduled in a liquidated amount and not disputed, or if a Proof of Claim was timely filed and was not objected to prior to the Claim Objection Deadline. A Claim or Administrative Claim may also become an Allowed Claim pursuant to the terms of the Plan or by a Final Order entered on an objection to a Proof of Claim or on an application for administrative expense; estimated Claims that are Allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court, will not be considered Allowed Claims hereunder. No Disputed Claim will become an Allowed Claim unless and until all such matters are resolved or adjudicated fully and finally and a Final Order has been entered.

2.5    Annuities means the gifts made to CBNA by various donors for charitable gift annuities, in exchange for which such donors are receiving certain fixed payments during their lives or the life of another person, the payments for which were fixed at the date of the gift based on actuarial tables of the donor's life expectancy and uniform gift annuity rates.

2.6    Annuity Secured Claims means the right of the holders of the Annuities to receive the monthly payments provided for in the agreement between CBNA and such annuitant.

2.7    Arbitration Award means the decision of the Special Arbitrator in the binding arbitration procedure described in Article 18 below, setting forth the amount of each Allowed Settling Tort Claim.

2.8    Assets means each and every item of property and interest of the Debtor therein, as of the Effective Date, for which CBNA owns the legal and equitable title, which is part of the temporal goods of the Diocese as a juridic person, and which is property of the Estate under Bankruptcy Code § 541, whether tangible or intangible, legal or equitable, liquidated or unliquidated, and includes without limitation: (a) all Cash; (b) all Retained Claims; (c) any and all amounts owed to the Debtor, including accounts receivable and contract rights, whether due prior or subsequent to the Petition Date; (d) any other right, claim, cause of action, or defense,

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

THIRD AMENDED JOINT PLAN OF REORGANIZATION

In re *Catholic Bishop of Northern Alaska,* Case No. 08-00110-DMD

QB\9385065.5

whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law, including, but not limited to, all Insurance Actions; (e) all of the Debtor's books, records, and privileges; (f) all contracts, agreements, licenses, and leases; and (g) any other property of the Debtor.

2.9    Avoidance Actions means all actions pursuant to Bankruptcy Code §§ 544, 547, 548, 549 and 550 and any other actions provided for under applicable law, that allow a debtor, a trustee or a debtor in possession to, among other things, avoid certain transfers.

2.10    Ballot means the ballot accompanying the Plan and Disclosure Statement which will be sent to all Creditors entitled to vote on the Plan, on which such Creditors will indicate their vote to accept or reject the Plan, and pursuant to which any Tort Claimant will make the election to opt out of treatment of his or her Tort Claim as a Settling Tort Claim and into treatment as a Litigation Tort Claim or a Convenience Tort Claim.  There will be separate ballots for Tort Claimants and for other Creditors.  The Ballots, to the extent necessary, will be approved by the Bankruptcy Court.

2.11    Bankruptcy Code means Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., including any amendments thereto, which is in effect during the Reorganization Case.

2.12    Bankruptcy Court or Court.  These terms are completely synonymous and interchangeable and will refer to and mean the United States Bankruptcy Court for the District of Alaska, or such other court which exercises jurisdiction over part or all of the Reorganization Case, to the extent that the reference of part or all of the Reorganization Case is withdrawn.

2.13    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure promulgated under Title 28, United States Code, § 2075, including any amendments thereto, as they may be amended from time to time during the Reorganization Case.

2.14    Bar Date means December 2, 2008, the date established by the Court in the Bar Date Order as the date by which a Claim must be evidenced by the filing of a Proof of Claim with the Bankruptcy Court, but excludes the Administrative Claims Bar Date.

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

THIRD AMENDED JOINT PLAN OF REORGANIZATION                                  Page 4 of 89
                    In re *Catholic Bishop of Northern Alaska,* Case No. 08-00110-DMD
QB\9385065.5

2.15    Bar Date Order means the "Order Granting Debtor's Motion for an Order Fixing Time For Filing Proofs Of Claim; Approving Claim Forms; and Approving Manner and Form of Notice", entered May 30, 2008 [Docket #180] which, among other things, set the Bar Date and approved the Proof of Claim form to be used by Tort Claimants.

2.16    Binding Arbitration Process means the process through which the Claims of Settling Tort Claimants will be liquidated as described in Section 18.1 of the Plan.

2.17    Bishop means the Reverend Donald J. Kettler, or such other individual who may in the future become the acting Diocesan Bishop of CBNA during the term of the Plan.

2.18    Business Day means every day except Saturdays, Sundays, federal holidays, Catholic holidays recognized and observed by CBNA, and Alaska holidays observed by the Bankruptcy Court.

2.19    Canon Law means the Code of Canon Law applicable to the Roman Catholic Church.

2.20    Cash means cash, cash equivalents, bank deposits, and negotiable instruments payable on demand.

2.21    CBNA Real Property means the real property owned by CBNA, which is identified in the attached Exhibit "A".

2.22    Channeled Claims means the Tort Claims of Tort Claimants and Future Tort Claimants against the Settling Parties or the Released Parties which are channeled to and satisfied pursuant to the Plan out of the Settlement Trust.

2.23    Chapter 11 Professionals means the Debtor's Professionals, the Committee's Professionals and the Future Claims Representative Professionals wherever they are referred to collectively in the Plan.

2.24    Claim Allowance Agreement means an agreement between CBNA and a Tort Claimant, which is entered into prior to the Effective Date and approved by the Bankruptcy Court as reasonable under Bankruptcy Rule 9019, whereby CBNA and such Tort Claimant agree to Allow a Tort Claim at a certain amount.

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

2.25    <u>Claim Objection Deadline</u> means the date by which any objections to Claims other than Tort Claim or Future Tort Claims, if not previously Allowed, must be filed which, unless any earlier time is fixed by order of the Bankruptcy Court, and, as to which, subject to amendment rights and the relation back of amendments under applicable federal or state procedural rules, any objection to the allowance of any Claim and the assertion of any defense, setoff, counterclaim, recoupment, or other adverse claim of any kind of the Debtor or the Reorganized Debtor, must be filed on or before the first Business Day which is one hundred eighty (180) days after the Effective Date.

2.26    <u>Claim Payment Date</u> means the date which is ten (10) Business Days after a Claim becomes an Allowed Claim by a Final Order if such Claim is not an Allowed Claim on the Effective Date.

2.27    <u>Class</u> means each of the classifications of Claims described in Article 4 of the Plan.

2.28    <u>Co-Defendants</u> means the entities and individuals who are co-defendants with CBNA in the various state court actions or against whom Tort Claims might be asserted by a Tort Claimant.

2.29    <u>Committee</u> means the Official Committee of Unsecured Creditors appointed by the United States Trustee on March 31, 2008.

2.30    <u>Committee's Professionals</u> means:

> The law firm of Pachulski, Stang, Ziehl & Jones, LLP;
>
> The law firm of Manly & Stewart;
>
> The law firm of David Bundy, P.C.;
>
> The financial consulting firm of J. H. Cohn, LLP;
>
> The consulting firm of Morrow & Hensel; and

Any and all other similar professionals which the Committee retains to assist in the conduct of the Reorganization Case or to provide professional services for a specified purpose, all in accordance with Bankruptcy Code §§ 327(a) and 327(e).

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

THIRD AMENDED JOINT PLAN OF REORGANIZATION                                      Page 6 of 89
In re *Catholic Bishop of Northern Alaska,* Case No. 08-00110-DMD

QB\9385065.5

2.31    <u>Confirmation Date</u> means the date on which the Bankruptcy Court enters the Confirmation Order on the Court's docket.

2.32    <u>Confirmation Hearing</u> means the hearing held by the Bankruptcy Court regarding confirmation of the Plan, as such may be continued from time to time.

2.33    <u>Confirmation Order</u> means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code §1129 and which will, among other things:

(a)    provide that the settlement provisions and other provisions in the Plan and the Settlement Trust are binding on all Settling Tort Claimants;

(b)    provide that all Future Tort Claimants, whether or not they file a Proof of Claim or a Future Tort Claim Proof of Claim, are bound by the provisions of the Plan;

(c)    approve and provide for the implementation of the Plan Documents;

(d)    approve and incorporate the Settlement Trust Agreement as part of the Plan;

(e)    approve, pursuant to the Plan, CBNA's settlement with the Parish Churches, Monroe Foundation and the CTNA as set forth in the Parish Settlement Agreement and the Monroe Foundation Settlement Agreement;

(f)    provide that from and after the Effective Date, no action may be commenced or continued against CBNA;

(g)    approve the Asset sale to the Endowment upon the terms and conditions set forth in the agreement between the Endowment and CBNA and as set forth in the Plan and the Disclosure Statement;

(h)    approve the sale of the Pilgrim Springs Property to the high bidder at the Pilgrim Springs Auction pursuant to the order approving the Pilgrim Springs sale procedures;

**Quarles & Brady LLP**
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-
1621

(i)    provide that any and all actions against Parish Churches' property, including but not limited to *Official Committee of Unsecured Creditors v. Catholic Trust of Northern Alaska, et. al.*, Adversary No. 09-90025-DMD and *Official Committee of Unsecured Creditors v. Catholic Bishop of Northern Alaska, et. al.*, Adversary No. 09-90026-DMD, are dismissed with prejudice;

(j)    effect the release and discharge of certain Claims and the injunction against prosecution of the released Claims or Channeled Claims by any Creditors or parties in interest against Released Parties, Settling Parties, CBNA and any others described in Article 21 of the Plan, and provide for the channeling injunction with respect to Claims against Released Parties, Claims against Settling Parties and Claims against others as set forth in Sections 21.3 and 21.5 of the Plan;

(k)    approve the amendments to the Endowment provided for in Article 25 of the Plan; and

(l)    contain such other terms and provisions as are acceptable to CBNA and the Committee in their sole discretion.

2.34    <u>Continental</u> means that certain corporation organized and existing under the laws of South Carolina, with its principal place of business in Chicago, Illinois, known as Continental Insurance Company and any and all of its affiliates including CNA Financial Corporation, which is an authorized insurer in the State of Alaska, and which CBNA alleges issued primary liability insurance policies in the period between 1974 and 1979, which was the subject of Adversary No. 08-90033 before the Bankruptcy Court.

2.35    <u>Continental Claims</u> means any and all Claims held by Continental against the Debtor, including, but not limited to, any and all Claims for reimbursement of defense costs, damages, attorneys' fees or costs, directly or indirectly relating to the Bankruptcy Court's order granting summary judgment to Continental in Adversary No. 08-90033 and Claim No. 25 filed by Continental.

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

THIRD AMENDED JOINT PLAN OF REORGANIZATION         Page 8 of 89
In re *Catholic Bishop of Northern Alaska,* Case No. 08-00110-DMD
QB\9385065.5

2.36    Contingent means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

2.37    Contribution Actions means any actions commenced or which may be commenced against any Person against whom CBNA asserts a Contribution Claim.

2.38    Contribution Claims means any rights or claims of CBNA for indemnification, contribution or fault allocation against any Person who is or may be liable to CBNA or any Person on account of any Claims which are or may be asserted against CBNA.

2.39    Convenience Tort Claim means a Tort Claim that will be Allowed and paid $2,500 Cash as full and final compensation and satisfaction of the Tort Claim of the Settling Tort Claimant and will be subject to each and every release and injunctive provision of the Plan.

2.40    Convenience Tort Claimant means a holder of a Tort Claim who has elected to have his or her Tort Claim treated as a Convenience Tort Claim as full and final compensation for his or her Tort Claim, which will be discharged and subject to each and every release and injunctive provision of the Plan. A Tort Claimant may elect treatment as a Convenience Tort Claimant either by affirmative election on his or her Ballot or be deemed to elect treatment as a Convenience Tort Claimant by failing to timely take certain actions under the Litigation Protocol or the Binding Arbitration Process.

2.41    CTNA means the Catholic Trust of Northern Alaska.

2.42    Custom Questionnaire means the questionnaire for use by the Special Arbitrator in the Binding Arbitration Process that may be requested by a Great Divide Candidate Insurer no later than thirty (30) days after service of a completed Uniform Questionnaire.

2.43    Debtor or CBNA means the Catholic Bishop of Northern Alaska, an Alaska religious corporation sole, in all of its civil law capacities, including, but not limited to: (a) the Estate of CBNA and (b) CBNA as the representative of the Estate. The terms Debtor and CBNA which are completely synonymous and interchangeable.

2.44    Debtor's Professionals means:

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-
1621

The law firm of Quarles & Brady, LLP;

The law firm of Dorsey & Whitney, LLP;

The law firm of Cook, Schuhmann & Groseclose, Inc.;

The accounting and financial consulting firm of Keegan, Linscott & Kenon, P.C.;

The aircraft brokerage Northern Aircraft, Inc.;

The real estate firm of Robert Fox Realty, L.L.C.;

The geothermal consultant Gerald W. Huttrer of the firm of Geothermal Management Company, Inc.; and

any and all other similar professionals which the Debtor or the Reorganized Debtor retains to assist in the conduct of the Reorganization Case or to provide professional services for a specified purpose, all in accordance with Bankruptcy Code §§ 327(a) and 327(e).

2.45    <u>Diocese</u> means the canonical entity encompassing the territory of the Diocese of Fairbanks subject to the jurisdiction of the Bishop and through which the Bishop carries out his canonical duties in accordance with Canon Law.

2.46    <u>Diocesan Bishop</u> means, as provided in the Endowment Documents and pursuant to Canon Law, a title of the person within the Roman Catholic Church who is appointed by the Vatican See and designated as the Bishop who is to govern the Diocese and care for its people, with the cooperation and assistance of other Catholics, clerics and laity.  The term "Diocesan Bishop" does not mean or include the Bishop acting in his civil capacity as the sole director of CBNA.

2.47    <u>Disallowed</u> means, when referring to a Claim, a Claim or any portion of a Claim which has been disallowed or expunged by a Final Order.

2.48    <u>Disclosure Statement</u> means the Third Amended and Restated Disclosure Statement presented by CBNA with respect to the Plan, including, but not limited to, any restatements, amendments, modifications, and additional disclosures (if any) provided by CBNA to comply with Bankruptcy Code § 1127 or orders of the Bankruptcy Court, and which was conditionally approved by the Bankruptcy Court on December __, 2009.

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

THIRD AMENDED JOINT PLAN OF REORGANIZATION                                      Page 10 of 89
In re *Catholic Bishop of Northern Alaska,* Case No. 08-00110-DMD
QB\9385065.5

2.49   <u>Disputed Claim</u> means every Claim, or portion thereof, which is subject to any defense, setoff, counterclaim, recoupment, or other adverse claim of any kind of the Debtor or the Reorganized Debtor, or to which an objection (formal or informal) has been made and which has not yet been Disallowed or which has not become an Allowed Claim, in either case, pursuant to a Final Order.

2.50   <u>Disputed Claims Reserve</u> means the reserve to be established on the Effective Date (and, thereafter, to be maintained as necessary) to hold in one or more segregated accounts, Cash or other Assets equal to the aggregate amounts thereof, that would have been distributed on an applicable Claim Payment Date on account of a Disputed Claim.  In establishing the Disputed Claims Reserve on the Effective Date, all Disputed Claims may be estimated by the Reorganized Debtor at an amount equal to (a) such lesser amount that is agreed to by the holder of such Claim, (b) the amount claimed if the Court has not made an estimation of such Claim or the holder of such Claim has not agreed to a lesser amount, or (c) the amount, if any, determined by the Court by Final Order pursuant to Bankruptcy Code § 502(c), as an estimate for distribution purposes.  In any event, the Estimated Amount will be the maximum amount of the Claim for distribution purposes under the Plan.  The Disputed Claims Reserve may be adjusted from time to time after the Effective Date by the Reorganized Debtor, after taking into account the anticipated recovery fraction which has been or is anticipated to be paid to the holders of Allowed Claims, after giving effect to the amount of the Disputed Claims as determined pursuant to this provision.  The Disputed Claims Reserve will not apply to the Settlement Trust and/or the Litigation Trust (or the Litigation Reserve), each of which will be governed by the terms of the Settlement Trust Agreement, the Litigation Trust Agreement or the terms of the Litigation Reserve.

2.51   <u>District Court</u> means the United States District Court, District of Alaska.

2.52   <u>Effective Date</u> means the first Business Day which is twenty (20) days after entry of a final Confirmation Order in form and substance satisfactory to the Committee and the

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona  85701-1621

THIRD AMENDED JOINT PLAN OF REORGANIZATION                                      Page 11 of 89
                                                    In re *Catholic Bishop of Northern Alaska,* Case No. 08-00110-DMD
QB\9385065.5

Debtor in their sole discretion, unless the Confirmation Order is stayed or enjoined by the Bankruptcy Court, the District Court or another appellate court.

2.53    Endowment means the collection of endowment funds held in charitable trusts by CBNA and called The DONATE Fund that was established in 1980 to enable individuals, families, and others to support the future needs of the Diocese, the Parishes, schools, Monroe Foundation, agencies and programs within the Diocese, the investment return from which is used to support the specific programs for which the applicable Endowment was created.

2.54    Endowment Documents means all documents creating, governing or pertaining to the Endowment.

2.55    Estate means the bankruptcy estate of CBNA created under Bankruptcy Code § 541.

2.56    Estimated Amount means the maximum amount at which the Court or the District Court, pursuant to Bankruptcy Code § 502(c), at the request of CBNA or any other party with standing, estimates any Claim or Class of Claims against the Debtor that is contingent, unliquidated or disputed, but excluding any Tort Claim, or any Future Tort Claim for the purpose of: (a) allowance (for estimation purposes only); (b) distribution; (c) confirming the Plan pursuant to Bankruptcy Code § 1129; (d) voting to accept or reject the Plan pursuant to Bankruptcy Code § 1126 and Bankruptcy Rule 3018(a); or (e) any other proper purpose. The Debtor and the Committee will seek an order of the Bankruptcy Court providing that Tort Claims will be estimated at $1.00 per Claim *solely* for purposes of voting on the Plan. Such estimation of a Claim, including a Tort Claim, for purposes of voting on the Plan will not establish the valuation of the Claim, including a Tort Claim, or Class of Claims for distribution purposes.

2.57    Excluded Property means any real and personal property that is excluded from the Plan because:

(a)    it is not property of the Estate pursuant to Bankruptcy Code § 541;

(b)    it is critical to the continued ministry and mission of the Diocese and CBNA; or

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

THIRD AMENDED JOINT PLAN OF REORGANIZATION                                   Page 12 of 89
In re *Catholic Bishop of Northern Alaska*, Case No. 08-00110-DMD

QB\9385065.5

(c)    it is excluded under the Religious Freedom Restoration Act.

Notwithstanding the foregoing, and except for property which is not property of the Estate, CBNA, in its sole discretion, may, but will not be required to, elect to utilize some of the property which is either critical to the ministry and mission of the Diocese and CBNA or excluded under the Religious Freedom Restoration Act, in order to implement the Plan.

2.58    Executory Contract means every unexpired lease and other contract which is subject to being assumed or rejected by the Debtor under Bankruptcy Code § 365, pursuant to the Plan or pursuant to separate motion.

2.59    Final Order means any judgment or order of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing will then be pending, or as to which any right to appeal, petition for certiorari, reargue or rehear will have been waived in writing, in form and substance satisfactory to the Debtor or, in the case of the Confirmation Order, satisfactory to the Debtor and the Committee, or, on and after the Effective Date, in form and substance satisfactory to the Reorganized Debtor and as to the Litigation Trust, if any, and as to the Settlement Trust, the Settlement Trustee, or in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other court of competent jurisdiction will have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing will have been denied, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing will have expired provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order or judgment, will not cause such order or judgment not to be a Final Order.

2.60    Fund means the fund to be established by CBNA which will be used to fund: (i) Allowed Administrative Claims; (ii) the Insurance Actions; (iii) the Settlement Trust; and (iv) if

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona  85701-
1621

necessary, the Litigation Trust or the Litigation Reserve. The Fund will consist of all of the following:

> (a)    On the Effective Date or on the date provided for in the Plan, the net proceeds from the sale of the CBNA Real Property, including the proceeds from the sale of Assets to the Endowment, but not less than $9.8 million Cash as of the Effective Date;

> (b)    The net proceeds of the Pilgrim Springs Auction, including any amounts in excess of the Endowments opening bid of $1.850 million;

> (c)    Payments from the Participating Third Parties;

> (d)    Proceeds from the Special Appeal;

> (e)    Proceeds from the Parish Settlement and Monroe Foundation Settlement;

> (f)    Payments from the Settling Insurers;

> (g)    Any net recoveries from Contributions Claims.

2.61    <u>Future Claims Representative</u> means Michael Murphy, the person appointed by the Bankruptcy Court to act as the Future Claims Representative pursuant to "<u>Order Approving Joint Nomination of Future Claims Representative</u>" entered January 15, 2009 [Docket No. 341] and "<u>Order Approving Future Claims Representative's Application For Order Authorizing And Approving The Employment of Alix Partners, LLC</u>" entered March 27, 2009 [Docket No. 416]. The Future Claims Representative represents the interests of the Future Tort Claimants and has employed his affiliate, Alix Partners, LLC, as his advisor.

2.62    <u>Future Claims Representative's Professionals</u> means the financial consulting and advisory firm of Alix Partners, LLC; and any and all other professionals which the Future Claims Representative retains or employs to assist or advise in the conduct of the Reorganization Case or to provide professional services for a specified purpose, including attorneys or law firms, if retained by the Future Claims Representative, all in accordance with Bankruptcy Code §§ 327(a) and 327(e).

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

2.63    Future Claims Reserve means the reserve to be established on the Effective Date or such later date when funds from the Fund become available pursuant to Section 13.2 of the Plan (and, thereafter, to be maintained as necessary) by the Settlement Trustee to hold, in one or more segregated accounts, Cash or other Assets in an amount to be approved by the Court in the Confirmation Order. The Future Claims Reserve will not be funded from the first $9.8 Million transferred from the Fund to the Settlement Trustee. The Future Claims Reserve will be funded from the first monies received by the Settlement Trustee (borne by the Settlement Trust and the Litigation Trust, if any, on a pro rata basis) and will not exceed ten percent (10%) of the total amounts transferred to the Settlement Trustee. Any Future Tort Claims that are Allowed will be paid out of the Future Claims Reserve regardless of whether the Future Tort Claimant elects the Future Tort Claim Settlement Process or the Future Tort Claim Litigation Process.

2.64    Future Tort Claim Litigation Process means the procedure for liquidating and Allowing or Disallowing a Future Tort Claim of a Future Tort Claimant who has opted to litigate his or her Future Tort Claim in accordance with the procedures described in Section 13.6(d) of the Plan.

2.65    Future Tort Claim Proof of Claim means the proof of claim in the form to be developed and furnished by the Special Arbitrator to a Future Tort Claimant pursuant to Section 13.6 of the Plan and which includes a release of any and all claims against the Debtor, the Reorganized Debtor, the Settlement Trustee and any Participating Third Party or Settling Party in the form developed by the Special Arbitrator.

2.66    Future Tort Claim Settlement Process means the procedure for liquidating and Allowing or Disallowing a Future Tort Claim of a Future Tort Claimant whose Future Tort Claim is liquidated and Allowed or Disallowed pursuant to Section 13.6(c) of the Plan.

2.67    Future Tort Claimant means an individual who has, or contends he or she has, a Future Tort Claim.

2.68    Future Tort Claims means all Tort Claims that:

THIRD AMENDED JOINT PLAN OF REORGANIZATION

(a)     are neither timely filed nor deemed to be timely filed (e.g., due to excusable neglect); and

(b)     held by a claimant who turns 18 on or after November 2, 2008 (the date which is thirty (30) days prior to the generally applicable Claims Bar Date in the Reorganization Case of December 2, 2008); or

(c)     held by a claimant for whom the applicable Alaska tort claim statute of limitations, for any reason, has not expired or has been tolled as of November 2, 2008, as determined under applicable Alaska or federal law, but without regard to federal bankruptcy law; and

(d)     for which a Proof of Claim is submitted in accordance with the procedures set forth in the Plan.

A Future Tort Claimant will have his or her Future Tort Claim determined by the Special Arbitrator in accordance with procedures set forth in Section. 13 of the Plan, unless the Future Tort Claimant timely elects to have his or her Future Tort Claim liquidated in accordance with the procedures set forth in Section 13 of the Plan.  Notwithstanding the foregoing, the Future Tort Claim will be paid only from the Future Claims Reserve.

2.69   <u>General Unsecured Convenience Claim</u> means a General Unsecured Claim in an amount of $500 or less, inclusive of interest accrued thereon, after the Petition Date through the latter to occur on the Effective Date or the Claim Payment Date; <u>provided</u>, <u>that</u>, if the holder of an Unsecured Claim in an amount greater than $500 makes an election to reduce such Claim to $500, such Claim will be treated as a General Unsecured Convenience Claim for all purposes. Such election will be made on the Ballot, completed and returned within the time fixed by order of the Court.  Making this election will be deemed to be a waiver by such electing holder of any right to participate in Class 8, as to any and all Claims held by such holder.

2.70   <u>General Unsecured Claim</u> means every Unsecured Claim against CBNA (including, but not limited to, every such Claim arising from the rejection of an Executory Contract and every Claim which is the undersecured portion of any Secured Claim), which is not

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-
1621

an Administrative Claim, a Priority Unsecured Claim, a Priority Tax Claim, a General Unsecured Convenience Claim, a Jesuit Unsecured Claim, an Other Tort and Employee Claim, an Insurance and Benefit Claim, a Pilgrim Springs Claim, a Tort Claim, a Future Tort Claim or a Penalty Claim, and which is classified and treated as the Plan provides for Class 8 Claims.

2.71    Great Divide Candidate Insurers means The Catholic Mutual Relief Society of America, and Travelers Casualty and Surety Company, formerly known as Aetna Casualty and Surety Company, and any other Insurance Company that breaches its obligation to defend and/or indemnify the Debtor under its Insurance Policies with the Debtor and/or that fails to unconditionally confirm liability coverage to CBNA under the liability insurance coverage issued by that insurer to CBNA, but rather reserves rights to deny liability coverage to CBNA.

2.72    Great Falls means the Roman Catholic Bishop of Great Falls, Montana, the lender of the Great Falls DIP Loan.

2.73    Great Falls DIP Loan means the secured debtor-in-possession loan in the original principal amount of $1,000,000 approved on an interim basis pursuant to "Amended Order Granting Emergency Motion for Interim DIP Financing" entered November 26, 2008 [Docket No. 299] and on a final basis pursuant to "Final Order Approving Debtor-In-Possession Financing Pursuant to Stipulation" entered December 12, 2008 [Docket No. 317] and which is evidenced by, among other things, the Great Falls Promissory Note.

2.74    Great Falls Promissory Note means that certain Promissory Note dated December 17, 2008 in the original principal sum of $1,000,000 evidencing, in part, the Great Falls DIP Loan.

2.75    Great Falls Secured Claim means the Secured Claim of Great Falls with respect to the Great Falls DIP Loan.

2.76    Insurance Actions means all Claims, causes of action and enforceable rights of the Debtor against any Insurance Company, including, but not limited to, those arising from or related to:

(a)    the Insurance Adversary;

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-
1621

(b)    any such Insurance Company's failure to provide Insurance Coverage under any Insurance Policy; or

(c)    the refusal of any Insurance Company to compromise and settle any Claim pursuant to any such Insurance Policy.

2.77    <u>Insurance Adversary</u> means the adversary proceeding commenced in the Bankruptcy Court by CBNA, Adversary Proceeding No. 08-90019, the reference of which was withdrawn to the District Court as Case No. 4:08-cv-00038 but referred to the Bankruptcy Court for certain pretrial proceedings and wherein Continental Insurance Company, The Catholic Mutual Relief Society of America, The Catholic Relief Insurance Company of America, Alaska National Insurance Company, and Travelers Casualty and Surety Company, formerly known as Aetna Casualty and Surety Company, are the defendants which, among other things, is to determine the scope of Insurance Coverage.

2.78    <u>Insurance and Benefit Claims</u> means any Unsecured Claim arising from or related to obligations, contributions or benefits which are the obligation of CBNA pursuant to any pension or other benefit plan sponsored by CBNA or for which CBNA is otherwise obligated, in effect as of the Petition Date.

2.79    <u>Insurance Company</u> means any insurance company and/or any other entity providing Insurance Coverage to the Debtor for liability arising from or related to Tort Claims or Future Tort Claims, including but not limited to, The Catholic Mutual Relief Society of America, The Catholic Relief Insurance Company of America, Alaska National Insurance Company, and Travelers Casualty and Surety Company, formerly known as Aetna Casualty and Surety Company.

2.80    <u>Insurance Coverage</u> means the defense, indemnity and other insurance coverages, not reduced to settlement proceeds, available to the Debtor or any Participating Third Party with respect to Tort Claims, Future Tort Claims, or any Other Tort and Employee Claims or any other Claims under any Insurance Policy and which includes the Jesuit Safeco Insurance Policy Claims.

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

THIRD AMENDED JOINT PLAN OF REORGANIZATION        Page 18 of 89
In re *Catholic Bishop of Northern Alaska,* Case No. 08-00110-DMD
QB\9385065.5

2.81    Insurance Policy means any liability insurance or sexual misconduct policy naming the Debtor or any Participating Third Party as an insured, in effect on or before the Confirmation Date upon which any Claim has been or may be made, with respect to any Tort Claim or Future Tort Claim.

2.82    Jesuits means the Society of Jesus, Oregon Province, which is a religious order of men within the Roman Catholic Church and which is a debtor in a Chapter 11 case pending in the United States Bankruptcy Court for the District of Oregon, Case No. 09-30938.

2.83    Jesuit Fault Allocation Claims means every Claim the Debtor has against the Jesuits, including, but not limited to, all Contribution Claims.

2.84    Jesuit Safeco Insurance Policies Claims means any and all Claims of CBNA or any other Settling Party against Safeco Insurance Company for any defense, indemnity and other insurance coverages, available to the Debtor or any Participating Third Party with respect to any Tort Claims or Future Tort Claims, as a result of any insurance policies issued to the Jesuits.

2.85    Jesuit Unsecured Claims means the General Unsecured Claims asserted by the Jesuits against CBNA and designated as Claim Nos. 16, 17 and 20 in the Claims Docket of the Reorganization Case.

2.86    Litigation Protocol means the litigation procedures described in Section 13.5 of the Plan and in the Litigation Trust Agreement.

2.87    Litigation Reserve means the reserve that may be established pursuant to agreement between the Debtor and the Committee prior to the Confirmation Hearing, if any Tort Claimant opts out of treatment as a Settling Tort Claimant pursuant to the Plan and the Ballot. The Litigation Reserve will take the place of the Litigation Trust and will be held and administered by the Settlement Trustee as part of the Settlement Trust. In the event a Litigation Reserve is established, the Litigation Reserve will function and be administered in the same manner as the Litigation Trust. The allocation of the funding between the Litigation Trust (or the Litigation Reserve) and the Settlement Trust will be approved as part of the confirmation process. Either the Debtor and the Committee will agree on the allocation and such agreement

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

THIRD AMENDED JOINT PLAN OF REORGANIZATION                                      Page 19 of 89

QB\9385065.5

will be approved by the Bankruptcy Court and incorporated into the Confirmation Order or, if the Committee and the Debtor cannot agree on the allocation, the Bankruptcy Court will decide the allocation as part of the confirmation process and such allocation as determined by the Bankruptcy Court.

2.88    <u>Litigation Tort Claim</u> means the Tort Claims of Tort Claimants who opt out of the Settlement Trust and elect to litigate their Tort Claims pursuant to Section 13.5 of the Plan.

2.89    <u>Litigation Tort Claimant</u> means a Tort Claimant who has expressly elected on his or her Ballot to have his or her Tort Claim determined and liquidated under the Litigation Protocol and, if Allowed, to accept pro rata payment from the Litigation Trust as the sole source of payment, compensation and satisfaction for his or her Tort Claim.

2.90    <u>Litigation Trust</u> means the trust which may be established pursuant to the Litigation Trust Agreement if no Litigation Reserve is established, and which will:

(a)    receive, hold and invest funds from the Fund allocated to the Litigation Trust pursuant to the terms of the Plan;

(b)    issue payments and disburse funds as provided in the Litigation Trust Agreement and the Plan;

(c)    participate in the litigation as the defendant (through the Settlement Trustee) with respect to any Litigation Tort Claimants;

(d)    participate in the litigation as the defendant (through the Settlement Trustee) with respect to any Future Tort Claims if the Future Claimant elects to opt out of the Settlement Trust in accordance with the Plan and the Plan Documents;

(e)    establishes the Trust Administrative Expense Reserve; and

(f)    pay the costs of such litigation from the Trust Administrative Expense Reserve.

The Litigation Trust will qualify to be a "Qualified Settlement Fund" pursuant to applicable provisions of the Internal Revenue Code.

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-
1621

2.91    <u>Litigation Trust Agreement</u> means the agreement creating the Litigation Trust if one is established in accordance with Article 13 of the Plan, which, if established will be funded by that portion of the Fund allocated to the Litigation Trust, and from which the Claims of Litigation Tort Claimants (or the Claims of any Future Tort Claimants, if applicable) will be paid and satisfied and which will be administered by the Settlement Trustee.  If a Litigation Trust is established because one or more Tort Claimants opts out of the Settlement Trust as provided in the Plan, the Ballot and any order of the Bankruptcy Court, then the Litigation Trust Agreement will be filed with the Court no later than five (5) calendar days prior to the Confirmation Hearing and become a part of the Plan; <u>provided</u>, <u>however</u>, <u>that</u> nothing contained in the Plan or the Disclosure Statement will preclude the Debtor and the Committee from agreeing that the Litigation Reserve can be established within the Settlement Trust.  If the Debtor and the Committee agree that the Litigation Reserve is to be established within the Settlement Trust, the Settlement Trust Agreement will be modified to so provide, and the modifications will be filed with the Court no later than five (5) calendar days prior to the Confirmation Hearing and become a part of the Plan and the Settlement Trust.  In all events, the trustee of the Litigation Trust will be the Settlement Trustee.

2.92    <u>Monroe Foundation</u> means that certain Alaska non-profit corporation which raises money to benefit the Catholic Schools of Fairbanks and whose primary offices are located at 615 Monroe St., Fairbanks, Alaska 99701.

2.93    <u>Monroe Foundation Settlement</u> means the settlement between the Debtor and the Monroe Foundation, as more particularly described in the Monroe Foundation Settlement Agreement.

2.94    <u>Monroe Foundation Settlement Agreement</u> means that certain settlement agreement between the Debtor and the Monroe Foundation which is incorporated into and will be made a part of the Plan pursuant to Article 22 of the Plan.  The Monroe Foundation Settlement Agreement will be filed with the Court at least twenty (20) days prior to the Confirmation Hearing.

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

2.95    <u>Other Secured Claims</u> means all Secured Claims against the Debtor which are not Secured Tax Claims or which are not separately classified under the Plan.

2.96    <u>Other Tort and Employee Claims</u> means any and all Claims, demands, suits, causes of action, proceedings or any other rights or asserted right to payment heretofore, now or hereafter asserted against the Debtor, whether or not reduced to judgment, for property damage, liability or workers compensation for which CBNA is or may be liable (directly or indirectly), whether arising from tort, contract or workers compensation for which there is Insurance Coverage, including but not limited to, any Claim for which CBNA has a self-insured retention, <u>but</u> <u>excluding</u> Tort Claims, Future Tort Claims and any Claims of employees entitled to priority pursuant to Bankruptcy Code § 507.  Other Tort and Employee Claims are Unsecured Claims.

2.97    <u>Parish</u> means any one of the forty-six (46) Roman Catholic ecclesiastical entities designated by the Diocesan Bishop as established stable communities of the Christian faithful that have been entrusted to a proper pastor.

2.98    <u>Parish Church</u> means each of those forty-six (46) civil law unincorporated associations located within the territory of the Diocese that function as the civil law embodiment of the canonical juridic persons known as a Parish including, but not limited to, and without limitation, all missions, churches, schools and other institutions within a Parish Church or which form a part of the operations of any of the Parish Churches.  Notwithstanding the Committee's joinder in the Plan as a co-proponent, the Committee's joinder in the Plan does not constitute an admission by the Committee that the Parish Churches are unincorporated associations.

2.99    <u>Parish Real Property</u> means all real property owned by a Parish:

      (a)    for which CBNA holds bare legal title in trust for the benefit of the Parish;

      (b)    in which CBNA has no beneficial, equitable or other proprietary interest;

      (c)    in which the Parish, for whose benefit such real property is held, has all equitable, proprietary and beneficial interest; and

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

(d)    which is part of the temporal goods of the Parish as a juridic person under Canon Law and any applicable equivalent civil law entity.

2.100   <u>Parish Settlement</u> means the settlement among the Debtor on the one hand, and the Parish Churches and affiliated entities on the other hand, as set forth in the Parish Settlement Agreement.

2.101   <u>Parish Settlement Agreement</u> means that certain settlement agreement among the Debtor on the one hand, and the Parish Churches and affiliated entities on the other hand, which will be incorporated into and made a part of the Plan pursuant in Article 22. The Parish Settlement Agreement will be filed with the Court at least twenty (20) days prior to the Confirmation Hearing.

2.102   <u>Participating Third Parties</u> means any Co-Defendant or any other Person, including, but not limited to the Parish Churches, the Monroe Foundation, the CTNA and Continental, who contribute funds to the Estate (or the Fund) to be used to pay Allowed Tort Claims or Allowed Future Tort Claims, in exchange for and in consideration of, among other things, the channeling injunction to be provided for in Section 21.5 of the Plan. Any agreement whereby a Person or Co-Defendant becomes a Participating Third Party, will be subject to approval by the Bankruptcy Court; <u>provided, however, that</u> the Society of Jesus and its related parties, the Jesuits and its related parties, and the individuals identified in Exhibit "B" or any priests or others against whom CBNA or the Settlement Trustee has determined or may, in the future, determine, that there are credible allegations of sexual abuse asserted against such Person(s) will not be eligible to be Participating Third Parties under the Plan.

2.103   <u>Parties</u> means any Released Parties, any Settling Parties, CBNA, the Diocese, the Reorganized Debtor, the Settlement Trustee, the Settlement Trust, the Litigation Trust (if any), the Special Arbitrator and their respective civil law and Canon Law predecessors, successors, officials, shareholders, subsidiaries, officers, directors, divisions, affiliates, representatives, agents, employees, attorneys, merged or acquired companies or operations or assigns, but **EXCLUDING** the Society of Jesus and any of its affiliates or related parties, the Jesuits and any

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

THIRD AMENDED JOINT PLAN OF REORGANIZATION    Page 23 of 89
In re *Catholic Bishop of Northern Alaska*, Case No. 08-00110-DMD
QB\9385065.5

of its affiliates or related parties; further **EXCLUDING** any individuals identified in Exhibit "B" to the Plan or any priests or others against whom CBNA or the Settlement Trustee has determined or may, in the future, determine, that there are credible allegations of sexual abuse asserted against such Person(s); and further **EXCLUDING** any affiliates of CBNA or the Diocese who are not organized and functioning within the territory of the Diocese. By way of clarification, the term affiliates as used in this definition is not limited to the definition of "affiliate" as defined in the Bankruptcy Code nor would the term "affiliates" as used in this definition include any other diocese or archdioceses unless such diocese or archdiocese is the subject of an agreement whereby such diocese or archdiocese becomes a Participating Third Party.

2.104 <u>Penalty Claims</u> means any Claims for any fine, penalty, forfeiture, multiple damages, punitive damages, or exemplary damages, including, but not limited to, any such Claims not meant to compensate the claimant for actual pecuniary loss.

2.105 <u>Petition Date</u> means March 1, 2008, which is the filing date of the voluntary Chapter 11 petition commencing the Reorganization Case.

2.106 <u>Pilgrim Springs Auction</u> means the auction sale of the Pilgrim Springs Property to be conducted pursuant to the Plan, but after the Confirmation Hearing, whereby the Pilgrim Springs Property will be sold free and clear of all liens, claims, interests and encumbrances, including the Pilgrim Springs Claims, but subject to the UAF License, to the bidder submitting the highest and best bid.

2.107 <u>Pilgrim Springs Claims</u> means: (i) all Claims of whatever nature asserted by Pilgrim Springs, Ltd. in Proof of Claim No. 21, filed in the Reorganization Case, including any amendments or modifications thereto and any other Claims or causes of action that Pilgrim Springs, Ltd. might or could assert against CBNA; and (ii) all Claims of whatever nature asserted by Louis H. and Nancy E. Green in the Proof of Claim No. 23 filed in the Reorganization Case, including any amendments or modifications thereto and any other Claims or causes of action that Louis H. and Nancy E. Green might or could assert against CBNA.

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

THIRD AMENDED JOINT PLAN OF REORGANIZATION                                    Page 24 of 89
In re *Catholic Bishop of Northern Alaska,* Case No. 08-00110-DMD
QB\9385065.5

2.108  Pilgrim Springs Property means the three hundred twenty (320) acre enclave of real property and improvements owned in fee simple by CBNA and located in western Alaska, about 75 km (~46 miles) north of Nome and where CBNA is currently investigating the exploration, characterization, and development of the geothermal resources underlying the Pilgrim Springs Property or such other use as may be appropriate for the Pilgrim Springs Property.

2.109  Pilgrim Springs Setoff Claims means all Claims, demands, damages, causes of action, cross-claims, counterclaims, rights of setoff and rights of recoupment against Pilgrim Springs, Ltd. and Louis H. and Nancy E. Green, arising out of, related to or pertaining to the Pilgrim Springs Property.

2.110  Plan means the "Third Amended and Restated Joint Plan of Reorganization For Catholic Bishop Of Northern Alaska" dated December 16, 2009 and every restatement, amendment, or modification thereof, if any, filed by the Debtor and the Committee.

2.111  Plan Documents means the Settlement Trust Agreement, the Litigation Trust Agreement if one is proposed, and all other documents and exhibits as the same may be amended, modified, supplemented, or restated from time to time, that aid in effectuating the Plan, which documents and exhibits will be filed by the Debtor with the Court on or before a date that is ten (10) days prior to the Confirmation Hearing or such other date as determined by the Court, the Plan or agreed to by the Debtor and the Committee.

2.112  Post-Effective Date Secured Tax Claims means every whole or prorated portion of a Secured Tax Claim which arises on or after the Effective Date, and which will be paid in the ordinary course of business of the Reorganized Debtor.

2.113  Preliminary Distribution means the Pro Rata distribution to be made by the Settlement Trustee of the Cash in the Settlement Trust **less** the Administrative Trust Reserve and any other reserves allowed pursuant to the Plan or the Settlement Trust Agreement.  The date for determination of the amount of the Preliminary Distribution will be the date that the Special Arbitrator has finally determined every Settling Tort Claimant's share of the Settlement Trust.

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

THIRD AMENDED JOINT PLAN OF REORGANIZATION

In re *Catholic Bishop of Northern Alaska,* Case No. 08-00110-DMD

QB\9385065.5

The Pro Rata share of each Settling Tort Claimant's share of the Preliminary Distribution will be based upon the formula set forth in Section 13.4 of the Plan.

2.114   Prepetition Date Secured Tax Claims means every whole or prorated portion of a Secured Tax Claim which arises before and up to the Petition Date, and which will be classified and paid under the Plan, as the Plan provides for Class 2 Claims.

2.115   Priority Employee Unsecured Claim means every Unsecured Claim of an employee of CBNA for vacation or sick leave pay, which is otherwise entitled to priority pursuant to Bankruptcy Code § 507(a)(4)(A).

2.116   Priority Tax Claim means every Unsecured Claim or portion thereof, which is entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

2.117   Priority Unsecured Claim means every Unsecured Claim or portion thereof, which is not an Administrative Claim, a Priority Tax Claim or a Priority Employee Unsecured Claim and which is entitled to priority under any applicable provision of Bankruptcy Code § 507.

2.118   Pro Rata means proportionate, and when applied to a Claim, means the ratio of the consideration distributed on account of an Allowed Claim in a Class, to the amount of consideration distributed on account of all Allowed Claims in such Class.

2.119   Professional Charges means the Allowed interim and final professional fees and expenses charged by the Debtor's Professionals, the Committee's Professionals, the Future Claims Representative, and the Future Claims Representative's Professionals.

2.120   Proof of Claim means the form used by a Creditor on which the specifics of a Claim are set forth as required by the Bankruptcy Code and the Bankruptcy Rules, and which is filed in accordance with the procedures contained in the Bar Date Order.

2.121   Property Tax Administrative Claim means every Claim of any state or local governmental unit which is an Administrative Claim for unpaid real property taxes, unpaid personal property taxes, or unpaid sales taxes or leasing taxes, and every prorated portion thereof arising on and after the Petition Date until the Effective Date.   Allowed Property Tax Administrative Claims will be classified and paid as Administrative Claims.

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

THIRD AMENDED JOINT PLAN OF REORGANIZATION
In re *Catholic Bishop of Northern Alaska,* Case No. 08-00110-DMD
QB\9385065.5

2.122  <u>Property Tax Claims</u> means collectively:  (a) every Property Tax Administrative Claim; (b) every Prepetition Date Secured Tax Claim; and (c) every Post-Effective Date Secured Tax Claim.

2.123  <u>Property Tax Claims Proration</u> means the proration of Property Tax Claims as of the Effective Date, so that: (a) Post-Effective Date Secured Tax Claims will be paid by the Reorganized Debtor in the ordinary course of its business; (b) Prepetition Date Secured Tax Claims will be paid by the Debtor or the Reorganized Debtor as provided for Class 2 Claims under the Plan; and (c) Property Tax Administrative Claims will be paid by the Debtor or the Reorganized Debtor as provided for Administrative Claims under the Plan.

2.124  <u>Qualified Counsel</u> means an attorney representing a Person asserting an Allowed Settling Tort Claim who has entered into an enforceable written retainer or fee agreement with such holder on or before the Effective Date, and has provided the Settlement Trustee with a copy of the agreement and a declaration under penalty of perjury that no fees or costs are to be repaid to the client or any insider or affiliate of the client; <u>provided</u> <u>that</u> such attorney agrees that the attorney's receipt of Qualified Counsel Fees is credited against the fees owed by the Allowed Settlement Tort Claimant.

2.125  <u>Qualified Counsel Fees</u> means the amount to be subtracted from the Settlement Trust in an amount equal to the actual fees and reimbursable expenses payable to Qualified Counsel pursuant to written retainer or fee agreements between Qualified Counsel and a Tort Claimant.  Before any distribution(s) to any Settling Tort Claimant with an Allowed Tort Claim, the Settlement Trustee will subtract all Qualified Counsel Fees.

2.126  <u>Released Parties</u> means the Diocese, the Committee, the Future Claims Representative, and all of their respective present or former civil law and Canon Law members, officials, representatives, managers, officers, directors, employees, consultants, advisors, attorneys, or agents acting in such capacity, and the Debtor's Professionals, Committee's Professionals and Future Claims Representative's Professionals but **EXCLUDING** the Society of Jesus, the Society of Jesus Oregon Province and its affiliates or any related parties to the

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

THIRD AMENDED JOINT PLAN OF REORGANIZATION

In re *Catholic Bishop of Northern Alaska,* Case No. 08-00110-DMD

QB\9385065.5

Society of Jesus or the Jesuits and further **EXCLUDING** individuals listed in Exhibit "B" or any priests or others against whom CBNA or the Settlement Trustee has determined or may, in the future, determine, that there are credible allegations of sexual abuse asserted against such Person(s).

2.127   Reorganization Case means the case under Chapter 11 of the Bankruptcy Code, which was commenced by the filing of a voluntary Chapter 11 petition by CBNA on the Petition Date.

2.128   Reorganized Debtor means CBNA, from and after the Effective Date.   Unless otherwise expressly stated or the context otherwise requires, references to "the Debtor and the Reorganized Debtor" and references to "the Debtor or the Reorganized Debtor" throughout various provisions of the Plan, are an effort to anticipate whether an event may occur before or after the Effective Date.   In this regard, and generally for purposes of the Plan, any written agreement made by the Debtor as part of the Plan before the Effective Date (unless provided otherwise), will survive the Confirmation Date and the Effective Date and will bind both the Reorganized Debtor and every other party to such agreement (including, but not limited to, the provisions of the Plan as confirmed).

2.129   Retained Claims means the Claims, demands, causes of action, cross-claims and counterclaims, including, but not limited to, all Avoidance Actions that are not otherwise settled pursuant to the Plan or agreements approved by the Bankruptcy Court on or prior to the Effective Date, all Contribution Actions, the Jesuit Fault Allocation Claims, the Jesuit Safeco Insurance Policies Claims, the Claims against North Mail, the Claims against all Insurance Companies not assigned to the Settlement Trust, including, but not limited to, any Claims against Insurance Companies who issued insurance policies to the Jesuits and pursuant to which the Debtor or the Reorganized Debtor may assert coverage Claims, and the Pilgrim Springs Setoff Claims.

2.130   Secured Claim means every Claim or portion thereof, which is asserted by the Creditor holding such Claim to be secured by a lien, security interest, or assignment, encumbering property in which the Debtor has an interest and including any right to setoff

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-
1621

asserted by a Creditor that is treated as a Secured Claim under the Bankruptcy Code, but only to the extent of the validity, perfection, and enforceability of the claimed lien, security interest, or assignment, and the value of the interest of the Creditor holding such Claim against such property of the Debtor.

2.131  Secured Tax Claim means every Claim of any federal, state, or local governmental unit, which is asserted by such governmental unit holding such Claim, which is secured by property of the Estate by operation of applicable non-bankruptcy laws, including, but not limited to, every such Claim for unpaid real property taxes, unpaid personal property taxes, or unpaid sales taxes or leasing taxes, and further including, but not limited to, both the Prepetition Date Secured Tax Claims and the Post-Effective Date Secured Tax Claims, but only to the extent of the validity, perfection, and enforceability of the claimed lien, security interest, or assignment, and the value of the interest of the governmental unit holding such Claim against the Debtor and only to the extent that such Secured Tax Claim does not relate to Parish Real Property.  Any Claims for unpaid real property taxes, unpaid personal property taxes, or unpaid sales taxes or leasing taxes pertaining to a Parish or Parish Real Property, will be paid by the Parish owning such Parish Real Property or other property pertaining to such tax.

2.132  Settlement Amount means the amount of an Allowed Settlement Tort Claim, to be determined through either a Claim Allowance Agreement or the Settlement Amount Determination Process and memorialized in an Arbitration Award.

2.133  Settlement Trust means the trust established pursuant to the Settlement Trust Agreement, from which the Allowed Claims of Settling Tort Claimants will be paid and satisfied, and which will be used for:

(a)  receiving, holding and investing funds from the Fund allocated to the Settlement Trust pursuant to the terms of the Plan;

(b)  receiving and holding Allowed Settling Tort Claims;

(c)  receiving and holding the Debtor's claims against Great Divide Candidate Insurers;

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-
1621

THIRD AMENDED JOINT PLAN OF REORGANIZATION                                    Page 29 of 89
In re *Catholic Bishop of Northern Alaska,* Case No. 08-00110-DMD

QB\9385065.5

(d)    issuing payments and disbursing funds as provided in the Settlement Trust Agreement and the Plan;

(e)    establishing the Future Claims Reserve (unless the Future Tort Claimant opts out of the Settlement Trust);

(f)    establishing the Trust Administrative Expense Reserve for the Settlement Trust;

(g)    issuing payments and disbursing funds as provided in the Settlement Trust Agreement or the Plan, on account of the Claims of Settling Tort Claimants;

(h)    paying the administrative costs as provided in the Settlement Trust Agreement including the costs, fees and expenses of the Settlement Trustee and the Special Arbitrator from the Trust Administrative Expense Reserve for the Settlement Trust Reserve; and

(i)    holding the assigned Allowed Settling Tort Claims and the deemed assignment of any Settling Tort Claimants' Claims against the Great Divide Candidate Insurers; and

(j)    holding the Debtor's Claims against the Great Divide Candidate Insurers.

The Settlement Trust will qualify to be a "Qualified Settlement Fund" pursuant to applicable provisions of the Internal Revenue Code.

2.134  <u>Settlement Trust Agreement</u> means the agreement creating the Settlement Trust to be established in accordance with Section 13.1 of the Plan.

2.135  <u>Settlement Trustee</u> means Robert L. Berger, the trustee under the Settlement Trust Agreement, appointed by the Court in the Confirmation Order. The Settlement Trustee will also be the Litigation Trustee if a Litigation Trust is established pursuant to the Plan or any modifications to the Plan, prior to the Confirmation Date; <u>provided, however, that</u> the Settlement Trustee may also act as for and on behalf of the Litigation Trust if one is established.

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

THIRD AMENDED JOINT PLAN OF REORGANIZATION       Page 30 of 89
In re *Catholic Bishop of Northern Alaska,* Case No. 08-00110-DMD
QB\9385065.5

2.136  <u>Settling Insurers</u> means those Insurance Companies that have reached settlements with CBNA prior to the Effective Date, and any Insurance Company that may reach a settlement with CBNA (or the Settlement Trustee if the Insurance Actions are assigned) with respect to any Insurance Actions after the Effective Date.  Any Settling Insurer, in exchange for the Settling Insurer's contribution to the Fund as agreed upon among the Settling Insurer, CBNA and the Committee and approved by the Bankruptcy Court, will obtain the benefit of an injunction provided for in Section 21.5 of the Plan and will be a Settling Party.  The terms of any settlement with a Settling Insurer, if not previously approved by the Bankruptcy Court pursuant to Bankruptcy Rule 9019 or such other provisions of the Bankruptcy Code or Bankruptcy Rules as may be set forth in any such settlement, will be approved at the Confirmation Hearing and pursuant to the Confirmation Order.  Any agreement to become a Settling Insurer entered into between the filing of the Plan and the Effective date must be with both the Debtor and the Committee.  If an Insurer reaches an agreement with the Settlement Trustee in order to become a Settling Insurer after the Effective Date, it will be approved by the Bankruptcy Court pursuant to its retained jurisdiction.  A Settling Insurer will obtain the benefit of the injunction to be issued pursuant to Section 21.5 of the Plan regardless of whether an Insurer becomes a Settling Insurer before or after the Effective Date.  As of the date of the Plan, Alaska National Insurance Company is the only Settling Insurer.

2.137  <u>Settling Parties</u> means Participating Third Parties and Settling Insurers and their civil law and Canon Law respective predecessors, successors, officials, employees, officers, custodians, shareholders, subsidiaries, divisions, affiliates, representatives, attorneys, merged or acquired companies or operations or assigns of the Settling Insurers and the Participating Third Parties.

2.138  <u>Settling Tort Claimant</u> means any holder of a Settling Tort Claim.

2.139  <u>Settling Tort Claim</u> means any and all Tort Claims that are subclassified as Settling Tort Claims under Section 13.1 of the Plan.

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

THIRD AMENDED JOINT PLAN OF REORGANIZATION

QB\9385065.5

In re *Catholic Bishop of Northern Alaska,* Case No. 08-00110-DMD

2.140  <u>Special Appeal</u> means the special appeal to the Alaskan Shepherd donors for restricted donations solicited annually for two (2) years with the first such appeal occurring on the first (1st) anniversary of the Effective Date and the second such appeal occurring on the second (2nd) anniversary of the Effective Date.  The first $150,000 of net contributions received from donors and restricted to the special appeal, after deducting the cost of solicitation and processing, will be used to fund counseling for Tort Claimants.  Any net contributions after the first $150,000, will be paid to the Settlement Trust to be held and distributed pursuant to the terms of the Settlement Trust and the Plan.

2.141  <u>Special Arbitrator</u> means the Honorable William L. Bettinelli (retired) to be appointed by the Court in the Confirmation Order to conduct the Binding Arbitration Process that will liquidate Allowed Settlement Tort Claims and will determine each Settling Tort Claimant's proportionate share of the Settlement Trust and, if applicable, each Future Tort Claimant's proportionate share of the Future Claims Reserve.

2.142  <u>Tort Claim</u> means any and all Claims for damages, including punitive damages, for attorneys' fees and other expenses, fees or costs and for any equitable remedy asserted against the Debtor, any Released Parties, any Settling Parties, the Settlement Trustee, the Settlement Trust, or the Litigation Trust related to bodily injuries or personal injuries, including emotional distress, mental distress, mental anguish, shock or humiliation caused by or related to: (a) acts of sexual abuse committed by any cleric, employee, volunteer or other person associated with the Debtor, the Diocese, any Parish or any affiliated entity within the territory of the Diocese; (b) the failure of the Debtor or the Diocese to properly hire, install and/or supervise any cleric, any volunteer, or any other employee of or person associated with the Debtor, the Diocese, a Parish or any affiliated entity within the territory of the Diocese; (c) the processing, adjustment, defense, settlement, payment, negotiation or handling of any Claims, demands, suits, proceedings or causes of action based upon or relating in any way to the Claims made as a result of any abuse or other Tort Claim asserted by a Tort Claimant; or (d) the failure to warn, disclose or provide information concerning the sexual abuse or other misconduct of clergy, other

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-
1621

employees or volunteers or persons associated with the Debtor, the Diocese, the Parishes or any affiliated entities within the territory of the Diocese. Subject to the limitations contained in the Plan and except for purposes of treatment and payment under the Plan, Tort Claims include Future Tort Claims when they are asserted by Future Tort Claimants.

2.143   Tort Claimant means a Person who asserts a Tort Claim.

2.144   Trust Administrative Expense Reserve means the reserve to be established on the Effective Date and maintained thereafter by the Settlement Trustee (as to the Settlement Trust and Litigation Trust, respectively), to pay the costs of administering the Settlement Trust and the Litigation Trust including, but not limited to, the applicable Settlement Trustee's fees, and legal and accounting fees, the fees, costs and expenses of the Special Arbitrator, the fees, costs and expenses of CBNA in the Insurance Actions after November 1, 2009; provided, however, that the fees, costs and expenses of CBNA in the Insurance Actions will not exceed $60,000 between November 1, 2009 and November 19, 2009, and further, provided, however that the fees, costs and expenses of CBNA in the Insurance Actions will only be paid from the Trust Administrative Expense Reserve if summary judgment is granted on either of the two motions at Docket Nos. 99 and 103 in the Adversary Proceeding No.08-90019, or if CBNA and the Committee, or the Settlement Trustee (after the Effective Date) settles with one or more of the Great Divide Candidate Insurers.

2.145   UAF License means that certain two year License granted to the University of Alaska Fairbanks to enter upon the Pilgrim Springs Property to conduct geothermal research pursuant to that certain $4.6 million Department of Energy grant.

2.146   Uniform Questionnaire means the questionnaire to be drafted by the Special Arbitrator, containing a fixed set of questions that will be distributed to each and every Settling Tort Claimant on or before the Effective Date. The content of the questionnaire will be in his or her sole discretion. In determining the questions, the Special Arbitrator may, but is not required to, consider the suggestions of the Debtor, the Reorganized Debtor, the Great Divide Candidate

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-1621

Insurers, the Tort Claimants and the Committee. The Special Arbitrator will utilize the responses to the Uniform Questionnaires to assist him or her in evaluating the Settling Tort Claims.

2.147    Unsecured Claim means every Claim, or portion thereof, which is not a Secured Claim, regardless of the priority of such Claim.

## ARTICLE 3

## UNCLASSIFIED CLAIMS

3.1    Administrative Claims. The holder of an Allowed Administrative Claim will receive, in full satisfaction of such Claim: (a) a single Cash payment in the Allowed amount of the Claim on the Effective Date (or the applicable Claim Payment Date); or (b) as otherwise agreed in writing by the holder of the Allowed Claim or ordered by the Bankruptcy Court. Every Allowed Administrative Claim for an expense of operation of the Debtor incurred in the ordinary course of such operations will be paid fully and in Cash in the ordinary course of business (including any payment terms applicable to any such expense).

3.2    Priority Unsecured Claims. The holder of every Allowed Priority Unsecured Claim will be paid, in full satisfaction of such Claim: (a) a single Cash payment in the Allowed amount of the Claim on the Effective Date (or the applicable Claim Payment Date); or (b) as otherwise agreed in writing by the holder of the Allowed Claim or ordered by the Bankruptcy Court.

3.3    Priority Tax Claims. The holder of every Allowed Priority Tax Claim, will be paid, in full satisfaction of such Claim pursuant to the provisions of Bankruptcy Code § 1129(a)(9)(C): (a) in deferred Cash payments over a period of five (5) years from the Petition Date, to be paid in equal quarterly installments of principal and interest; (b) the first payment to be made on the first Business Day after the day which is ninety (90) days after the later of the Effective Date or the Claim Payment Date; and (c) each payment thereafter to be paid on the first Business Day of each succeeding quarter until paid in full; provided, however, that the entire unpaid amount of the Allowed Priority Tax Claim, together with any interest accrued thereon,

Quarles & Brady LLP
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-
1621

will be paid in full on the date which is five (5) years after the Petition Date; or (d) as otherwise agreed in writing by the holder of the Allowed Claim or ordered by the Bankruptcy Court.

3.4 <u>Elimination of Claim</u>. To the extent there are no amounts owing on the Effective Date for any Priority Unsecured Claims and/or any Priority Tax Claims, such treatment as set forth above will be deemed automatically eliminated from the Plan.

## ARTICLE 4

## CLASSIFICATION OF CLAIMS

4.1 <u>Classification</u>. All Claims are classified under the Plan as hereafter stated in this Article 4; provided, however, that, a Claim will be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. As of the Confirmation Hearing, any Class of Claims which does not contain any Creditor's Claims will be deemed deleted automatically from the Plan, and any Class of Claims which does not contain an Allowed Claim (or a Claim temporarily or provisionally Allowed by the Bankruptcy Court for voting purposes) will be deemed automatically deleted from the Plan with respect to voting on confirmation of the Plan.

4.2 <u>Classes</u>. For purposes of the Plan, Claims against the Debtor are hereby classified in the following Classes in accordance with Bankruptcy Code § 1122(a) as follows:

<u>Class 1</u> – Priority Employee Unsecured Claims

<u>Class 2</u> – Prepetition Date Secured Tax Claims

<u>Class 3</u> – Other Secured Claims

<u>Class 4</u> – Great Falls Secured Claim

<u>Class 5</u> – Annuity Secured Claims

<u>Class 6</u> – General Unsecured Convenience Claims

<u>Class 7</u> – Jesuit Unsecured Claims

<u>Class 8</u> – General Unsecured Claims

<u>Class 9</u> – Other Tort and Employee Claims

**Quarles & Brady LLP**
One South Church Ave.
Suite 1700
Tucson, Arizona 85701-
1621