# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:<br><br>CATHOLIC BISHOP OF NORTHERN ALASKA,<br><br>                    Debtor. | Case No. F08-00110-DMD<br>Chapter 11<br><br>**Filed On 2/26/10** |

## MEMORANDUM ON GREENS' MOTION FOR PRELIMINARY INJUNCTION

On January 21, 2010, this court entered an order and judgment which found that Louis and Nancy Green and their attorney, Bryon Collins, had violated the automatic stay imposed by 11 U.S.C. § 362(a)(1), (3) and (6) by commencing and prosecuting a state court quiet title action against the debtor.[1] The order and judgment further found that this conduct was void because it had been committed in violation of the stay. The Greens and their attorney were ordered to file a notice of dismissal of the quiet title action by no later than February 4, 2010. Further, the debtor was to recover from the Greens and Mr. Collins, as a sanction for violation of the automatic stay, its reasonable costs and attorneys fees incurred in defending against the quiet title action and seeking to enforce the automatic stay.

On January 29, 2010, the Greens filed a timely notice of appeal of the order and judgment.[2] In this notice, the Greens also asked for "an expedited motion for a preliminary injunction against CBNA's proposed sale of plaintiff's Pilgrim Springs Property; a lien on

---

[1] Order Granting Debtor's Emergency Mot. for Order to Show Cause Why Sanctions for Violation of the Stay Should Not be Imposed, entered Jan. 21, 2010 (Docket No. 646); Judgment Imposing Sanctions for Violation of Automatic Stay, entered Jan. 21, 2010 (Docket No. 647).

[2] Notice of Appeal, filed Jan. 29. 2010 (Docket No. 666).

the property; an expedited stay of the State Court dismissal, and allowing the parallel State Court Action to proceed."[3] The Greens also made a timely election to have the appeal heard by the United States District Court for the District of Alaska.[4] The appeal has been duly transmitted to the District Court by the Clerk of this court, and bears Appeal No. 4:10-cv-00004-RRB.

On February 5, 2010, debtor CBNA filed an objection to the additional relief which had been requested in the Greens' notice of appeal.[5] CBNA noted that the requests were both unclear and procedurally improper, in that they should have been brought before the bankruptcy court in the first instance.[6] CBNA also argues that the Greens are not entitled to injunctive relief because they cannot show a likelihood of success on their quiet title claim to the Pilgrim Springs property. For the same reason, CBNA says the Greens are not entitled to an equitable lien on the property or a stay pending appeal.

CBNA asked for an expedited hearing on its objection. A hearing was held on February 16, 2010. At the hearing, Mr. Collins argued that CBNA's objection was unripe because he hadn't actually yet filed a motion for any of the relief requested in the Greens' notice of appeal. He said he simply wished to give CBNA notice of the type of relief the Greens would seek if their rights weren't preserved after sale of the Pilgrim Springs property, but also indicated that he was in the process of drafting motions for a stay and for injunctive

---

[3] *Id.*

[4] Notice of Election, filed Jan. 29. 2010 (Docket No. 667).

[5] Debtor's Obj. to Certain Relief Requested in Notice of Appeal of Louis and Nancy Green, filed Feb. 5, 2010 (Docket No. 674).

[6] *Id.* at 2.

2

relief. He said he could file his motion by no later than the following Monday, February 22, 2010. This court directed him to file the motion by this date, and set a hearing on the motion for February 26, 2010.

Mr. Collins filed a motion for preliminary injunction to stay the sale of Pilgrim Hot Springs on February 22, 2010.[7] He asks this court to enjoin the sale of the property pending the outcome of the Greens' appeal and the exhaustion of all the Greens' potential remedies with regard to the property. He argues that the Greens have shown a likelihood of success on the merits of both the appeal and their adverse possession claim. I have considered Mr. Collins's motion and supporting memorandum, CBNA's supplemental objection and the supporting declaration of Reverend Bowder, and the joinder to CBNA's objection filed by the Parishes, as well as the entire record in this proceeding. I have also weighed Mr. Green's testimony provided at the hearing on February 26, 2010. I conclude the Greens have not established a likelihood they will prevail on the merits of their claims. Their motion will be denied.

Analysis

The Greens' motion for preliminary injunction is procedurally defective. Such relief must be sought by way of an adversary proceeding, rather than motion, pursuant to Fed. R. Bankr. P. 7001(7). Even if the court were to overlook this fatal defect, the request for injunctive relief lacks merit. A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence

---

[7] Docket No. 703.

3

of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[8] A consideration of the same factors is employed to determine whether a party is entitled to a stay pending appeal.[9] The first two factors – likelihood of success on the merits and whether the applicant will be irreparably injured – are the most important.[10] The likelihood of success on the merits must be "better than negligible," and more than "some possibility of irreparable injury" must be shown.[11]

Applying these factors to the circumstances of this case, the Greens have not met their burden in showing entitlement to the relief they request. First, it is highly unlikely that the Greens will succeed in their pending appeal. This court's ruling that the Greens had violated the automatic stay when they commenced and prosecuted their quiet title action against the debtor was based on well established, fundamental bankruptcy law. Mr. Collins insists this court had no jurisdiction to make this determination because only the state court can determine the issue of title to Pilgrim Hot Springs. He is confusing this court's jurisdiction to determine the issue of whether a stay violation has occurred with the state court's jurisdiction to determine title to land within the state. A bankruptcy court has exclusive jurisdiction to enforce violations of the stay.[12] Further, Mr. Collins' citation to *In*

---

[8] *Winter v. Natural Resources Defense Council*, ___ U.S. ___, 129 S.Ct. 365, 374 (2008).

[9] *Nken v. Holder*, ___ U.S. ___, 129 S.Ct. 1749, 1761 (2009).

[10] *Id.*

[11] *Id.*

[12] *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1082 (9th Cir. 2000).

4

*re Lake Minnewaska Mountain Houses, Inc.*,[13] does not support his contention that the Greens' adverse possession claim has taken the Pilgrim Springs property out of CBNA's bankruptcy estate. The *Lake Minnewaska* case was decided in 1984, under the Bankruptcy Act. At that time, bankruptcy courts had "summary jurisdiction to adjudicate claims relating to a debtor's property where the debtor has actual or constructive possession *or* has title to the property."[14] The bankruptcy court's jurisdiction is much broader under the Bankruptcy Code, which gives the bankruptcy court jurisdiction over "all legal or equitable interests of the debtor in property as of the commencement of the case," and "wherever located and by whomever held."[15] The Greens' chances of success on appeal are not "better than negligible."

The same can be said for the Greens' chances of success if they were permitted to prosecute their adverse possession claim. "In order to acquire title by adverse possession, the claimant must prove, by clear and convincing evidence, that for the statutory period 'his use of the land was continuous, open and notorious, exclusive and hostile to the true owner.'"[16] "There is a presumption that one who possesses or uses another's property does so with the owner's permission," and if an adverse claimant has such permission, "the

---

[13] *Lake Minnewaska Mountain Houses, Inc. v. Smiley (In re Lake Minnewaske Mountain Houses, Inc.)*, 42 B.R. 366 (S.D.N.Y. 1984).

[14] *Id.* at 371 (citations omitted).

[15] 11 U.S.C. § 541(a)(1).

[16] *Smith v. Krebs*, 768 P.2d 124, 125 (Alaska 1989) (citations omitted, emphasis in original).

5

hostility requirement is not satisfied."[17] "If the adverse possessor holds the land as a tenant or otherwise with the record owner's permission, his claim is 'subordinate to the title of the true owner' and is therefore not hostile."[18]

The relevant period to be examined for the purposes of determining the validity of an adverse possession claim is the ten year period preceding the date that a complaint to determine title is filed.[19] Here, I will assume that the Greens have used and resided upon the Pilgrim Springs property for the preceding ten years. The Greens say they have made seasonal use of this property for this period by "making permanent improvements, storing their property upon, erecting fences and gates, evicting persons from the property, controlled all ingress and egress to the property, conducting extensive agricultural enterprises for their own use, and burying family members upon the property."[20] They contend they have a high probability of success on the merits because "the issue of Mr. Green's status as caretaker is irrelevant to his claim of adverse possession."[21] They also say any claim to Mr. Green's status as a caretaker "clearly violates the Statute of Frauds, as CBNA cannot produce any written agreement or contract."[22]

---

[17] *Id.* at 126.

[18] *Glover v. Glover*, 92 P.3d 387, 392 (Alaska 2004).

[19] *Nome 2000 v. Fagerstrom*, 799 P.2d 304, 309 (Alasak 1990) (discussing the limitation period found in AS 09.10.030).

[20] Mem. of Law in Support of Appellants' Mot. for Prelim. Inj., filed Feb. 22, 2010 (Docket No. 704), at 2.

[21] *Id.* at 10.

[22] *Id.* at 11.

6

The documentary evidence which CBNA has provided in its opposition and supplemental opposition strongly refutes their claim of adverse possession. The correspondence, e-mail exchanges, and receipts produced by CBNA establish that the Greens were caretakers of and sharecroppers on the Pilgrim Springs property.[23] They were on the property at the request of CBNA's lessee, Pilgrim Springs, Ltd., and CBNA took steps to receive assurance from its lessee that the Greens were on the property in these capacities rather than as squatters.

Representations made in this case by Pilgrim Springs, Ltd., indicate that CBNA's lessee considered Mr. Green to be its agent and caretaker, as well. Arthur Neuman, Pilgrim Springs, Ltd.'s director and secretary treasurer, filed Proof of Claim No. 21 on December 2, 2008. In his narrative describing the nature of the claim, Neuman described Mr. Green as "Pilgrim Springs caretaker and sharecropper" and also indicated Green assisted in writing grants for Pilgrim Springs, Ltd.[24] A copy of a letter from Neuman to CBNA dated August 3, 2008, describes Mr. Green as "our resident agent."[25] Neuman has even included a photograph of a beaver which had been shot by Mr. Green to support his statement that Pilgrim Springs, Ltd., took efforts to eradicate beavers to control flooding which occurred regularly on the property.[26]

---

[23] *See* Exhibits attached to Decl. of Thomas Buzek, filed Feb. 5, 2010 (Docket No. 678), and Supplemental Decl. of Rev. George Bowder, filed Feb. 24, 2010 (Docket No. 710).

[24] Proof of Claim No. 21, filed Dec. 2, 2008, narrative description of Nature of Claim at 8, 9.

[25] *Id.*, Ex. 48.

[26] *Id.,* Ex. 28.

7

Further, Neuman's description of the activities conducted on the hot springs property during the term of its lease shows that the Greens' use of the property was not exclusive. According to Neuman, capital improvements were made on the property from November 1, 1969, *prior* to the date the Greens contend they commenced adverse possession. Improvements were made to an airfield and buildings, 5 geothermal wells were drilled from 1979 to 1983, conducted geothermal exploration on the property in 1993 with the University of Alaska Geophysical Institute, and restored and repaired some of the historic buildings on the site.[27]

Mr. Green testified at the February 26, 2010, hearing about the time he had spent on the Pilgrim Springs property. He said he lived on the property from 1975 through 1992. He made repairs to the property and brought farm animals, such as chickens, to the property. He said he didn't really know Pilgrim Springs' director, Arthur Neuman. He knew Pilgrim Springs, Ltd., had a lease but that they weren't really doing anything about the property. He admitted he did make an offer to CBNA to take care of the property if it wanted him to. He said he had never really talked to anyone at Pilgrim Springs, Ltd., or CBNA, or elsewhere, for that matter, about his belief that he owned the property. He said he had started to investigate this point about a year ago. When asked what he really wanted for the hot springs property, he said he wanted it to be kept open to the public, that the church cemetery be well maintained, and that it wasn't trampled over and closed off.

Mr. Green was asked about a letter he had sent to CBNA on September 17, 1992, in which he stated that "Pilgrim Springs, Ltd. asked myself and my family to serve as

---

[27] *Id.*, narrative description of Nature of Claim at 2, Ex. 10.

8

caretakers of the Church property from 1975 to the late 1980's."[28] The letter further stated that "[t]he arrangement between Pilgrim [Springs, Ltd.] and the Green family was an exchange of gardening privileges in return for caretaker services." Finally, the letter states that Mr. Green has "known two members of Pilgrim Springs, Ltd. for a period of several years, one for 17 and one for 30 years" and that "[t]he Green family never did pay the company any income since there was none to pay, moreover, the company at no time subleased or assigned any part of its' lease to the Green family."[29] Mr. Green confirmed that he had written the letter, but when asked if it was true that he had a caretaker arrangement with Pilgrim Springs, Ltd., he sidestepped the question and said he didn't think the letter stated anything except that he didn't have knowledge of certain transactions.

As this court has previously noted,[30] the Greens themselves have stated that they were caretakers of the property for Pilgrim Springs, Ltd., in pleadings they have filed with this court. They filed a proof of claim in this case on December 2, 2008.[31] This was a general unsecured claim in the sum of $263,143.00. As the basis of the claim, the Greens wrote "the cancellation of the lease will cause us to lose a financial interest in the amount of $263,143.00."[32] The Greens included an attachment with their claim, which stated:

> Claim for labor, equipment, operating and transportation cost in connection with carrying-

---

[28] Decl. of Reverend Bowder, filed Feb. 24, 2010 (Docket No. 710), Ex. A.

[29] *Id.*

[30] *See* Mem. on Sanctions, filed Jan. 21, 2010, at 2, 9 n.34.

[31] *See* Proof of Claim No. 23, filed Dec. 2, 2008, by Louis and Nancy Green.

[32] *Id.* at 1.

9

> out duties as care-takers and agents at Pilgrim Hot Springs for Pilgrim Springs, LTD. Labor included upkeep of buildings, grading and repair of roads, trails, landing strip, bridge and culvert repair, pools and hot tub.
>
> . . . .
>
> Time period is from 1995 through 2008. My position as caretaker, farmer, on-site Nome Agent for Pilgrim Springs LTD. Most of the work is from April 15th thru October 15th.
>
> Other activities with Pilgrim Springs LTD: Care Taker from 1975 to 1985 cleared land, trails and worked fields back to cultivatable land, operated a camp for 4 years of exploration and drilling. . . . During this time I was provided diesel for generators *but I supplied generator, my own motor boats and other vehicles and fuel for transportation and my labor at no charge to Pilgrim Springs other than being part of the company. . . .*[33]

The Greens subsequently withdrew their proof of claim. However, the representations contained in that claim are clearly consistent with CBNA's understanding of Mr. Green's status as a caretaker and agent of its lessee, Pilgrim Springs, Ltd.

Mr. Green testified that he did prepare the proof of claim, without assistance. He said he withdrew the claim because someone told him he wasn't entitled to file a claim because he wasn't an employee. He couldn't remember who had told him that.

On November 30, 2009, the Greens wrote a letter in opposition to the debtor's disclosure statement in which they stated that they were "highly opposed to the sale of

---

[33] *Id.* at 2 (emphasis added).

10

Pilgrim Hot Springs."[34] They complained that they had been told by CBNA "in open meetings that the Pilgrim Hot Springs would not be for sale" and that the auction of this property "would hurt the community especially the youth of the region."[35] They also contended there was some inconsistency with the title to the Pilgrim Springs property because there was information that the property had been turned over to the local Nome parish but no indication that the parish had ever turned it over to CBNA. With regard to the cemetery, they stated:

> Another issue that should be known is that Pilgrim Hot Springs Cemetery was being used prior to the Catholic Church obtaining the property, many local families are interred there, we have two grandsons buried there. We feel that their remains and that of others should not be auctioned off to the highest bidder. We have done all the up-keep of the cemetery since early 1990's.[36]

There is nothing in the Greens' letter to indicate that they considered themselves to be owners of the Pilgrim Springs property. Further, the letter makes it clear that the cemetery is not a private family cemetery, but one that has been in use for several decades by many families in the region. Other parties have filed letters with the court expressing similar concerns about the cemetery.[37] The Pilgrim Springs property is on the National Register of

---

[34] Greens' Opp'n to Sale, filed Nov. 30, 2009 (Docket No. 580).

[35] *Id.*

[36] *Id.*

[37] *See* Letter from Nancy L. McGuire, Acting President of Friends of Pilgrim, filed Nov. 30, 2009 (Docket No. 577); Letter from GNL Exploration, filed Nov. 30, 2009 (Docket No. 576).

11

Historic Places, and CBNA has recognized the concerns about preserving the cemetery after auction of the property.[38]

The Greens have also taken inconsistent positions regarding the nature of their adverse possession claim. They initially based their claim of adverse possession on the "color of title" statute, AS 09.45.052.[39] They now concede that they have no claim under that statute, but that they nonetheless have acquired title in fee simple absolute due to their continuous use and possession of the Pilgrim Springs property "as a true owner for a period of 10 years."[40] The Greens cite *Nome 2000 v. Fagerstrom*[41] to support their adverse possession claim. This case is readily distinguishable from the Greens' situation, because no lease or other form of tenancy was involved. Here, it is undisputed that CBNA had leased the hot springs property to Pilgrim Springs, Ltd. The Greens were caretakers and agents for the lessee, Pilgrim Springs. Their presence upon and use of the property was consistent with the interests of the lessee. Under these circumstances, the Greens have not presented clear and convincing evidence that they acted in such a way that CBNA "could see that a hostile flag was being flown over [its] property."[42] The Greens' contentions that their status as a

---

[38] CBNA's Omnibus Reply to Objs. to Second Amended and Restated Discl. Statement, filed Dec. 3, 2009 (Docket No. 588), at 5-6.

[39] Greens' Opp'n to Debtor's Mot. to Show Cause why Sanctions for Violation of Automatic Stay Should not be Issued, filed Jan. 15, 2010 (Docket No. 637), at 2; Greens' Compl. to Quiet Title, Ex. A to Debtor's Emergency Mot., filed Jan. 8, 2010 (Docket No. 625).

[40] Mem. of Law in Support of Appellants' Mot. for Prelim. Inj., filed Feb. 22, 2010 (Docket No. 704), at 8.

[41] 799 P.2d 304 (Alaska 2004).

[42] *Id.* at 309, *citing Shilts v. Young*, 567 P.2d 769, 776 (Alaska 1977).

12

caretaker is irrelevant, and that the Statute of Frauds has been violated because there is no written agreement between themselves and *CBNA* are without merit.

One year after CBNA filed bankruptcy, in March, 2009, the Greens asked CBNA if they could stay on as caretakers of Pilgrim Springs in a similar capacity to the one they had held with CBNA's lessee.[43] This conduct is wholly inconsistent with the Greens' adverse possession claim. The Greens' request was rejected and they were asked to vacate the property by June of 2009.[44] Their adverse possession claim was asserted only after this occurred.

The Greens' argument that CBNA has no interest in the property because title vested in them, by way of adverse possession, prior to the date CBNA's bankruptcy was filed and without the need for further action, is not supportable. CBNA held record title to the hot springs property at the time the bankruptcy was filed. The Greens' own written representations to CBNA, from as early as 1992, as well as to this court, indicate that they were caretakers and agents of CBNA's lessee, Pilgrim Springs, Ltd. There is significant evidence to refute their adverse possession claim. Looking at the evidence as a whole, I find that the Greens' likelihood of success on their adverse possession claim is less than negligible.

There are three remaining factors to consider when determining whether to grant a preliminary injunction. The court must consider whether the Greens are likely to suffer irreparable harm in the absence of preliminary relief, if the balance of equities tips in

---

[43] Decl. of Thomas Buzek, filed Feb. 5, 2010 (Docket No. 678), at 3, Ex. 1.

[44] *Id.* at 3.

13

their favor, and whether an injunction is in the public interest. The Greens argue that they will suffer irreparable injury if the Pilgrim Springs property is sold before their adverse possession claim can be adjudicated. Given the small chance of success of their claim, I cannot find that the sale will cause this type of injury. The other injuries the Greens may suffer are more tangible. First, they may be required to vacate the property. But this is an injury commonly suffered by a tenant at the conclusion of a tenancy. Second, the Greens may have a monetary claim for the improvements they made to the property. It may be possible that they can assert this claim against Pilgrim Springs, Ltd. Insofar as they may have a claim against CBNA for the improvements, however, their situation is similar to those of other creditors in bankruptcy, and their rights in this regard are determined by the Bankruptcy Code. Their claim may not be recoverable from CBNA as a debtor in bankruptcy, but this fact alone is not the type of irreparable injury that justifies issuance of a preliminary injunction.

For the same reason, the balance of equities and public interest weigh in favor of CBNA, rather than the Greens. CBNA has proceeded in this bankruptcy case in accordance with the provisions of the Bankruptcy Code, giving due notice to all parties in interest of each significant event which has occurred in this case. The Greens have received notice of, and have participated in this case. There is a strong public interest in preserving the integrity of the bankruptcy process. The consequence of granting the Greens' requested preliminary injunction would derail and possibly defeat CBNA's reorganization efforts. Further, CBNA has recognized the interests of the public in preserving the historic structures

and cemetery and these interests can be accommodated in conjunction with the sale of the property.

As noted above, the same factors used to determine whether to grant a preliminary injunction are also applied when considering a request for a stay pending appeal.[45]  Because the Greens have not met this standard in their request for a preliminary injunction, they also are not entitled to a stay pending appeal.

For the foregoing reasons, the Greens' motion for preliminary injunction will be denied.  An order and judgment will be entered consistent with this memorandum.

DATED: February 26, 2010

BY THE COURT

 /s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve:  S. Boswell, Esq.
K. Nye, Esq.
J. Stang, Esq.
F. Elsaesser, Esq.
B. Collins, Esq.*
ECF Participants per Ntc. of Electronic Filing
K. Hill, Esq.
        02/26/10


* courtesy copy e-mailed on 2/26/10 - am.

---

[45] *Nken v. Holder*, ___ U.S. ___, 129 S.Ct. 1749, 1761 (2009).