## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made by, between and among the Catholic Bishop of Northern Alaska (referred to herein and defined fully in Section 1.1(f) below as "CBNA"), the "Other Releasing Parties" as defined in Section 1.1(p) below, the "Settlement Trustee" as defined in Section 1.1(u) below, the "Settlement Trust" as defined in Section 1.1(v) below, and Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) (referred to herein and defined fully in Section 1.1(y) below as "Travelers"). CBNA, the Other Releasing Parties, the Settlement Trustee, the Settlement Trust, and Travelers shall be referred to herein collectively as the "Parties."

### RECITALS

WHEREAS, Travelers issued certain policies of liability insurance to CBNA (referred to herein and defined fully in Section 1.1(s) below as the "Policies");

WHEREAS, beginning in 2002, individuals began asserting claims and/or filing lawsuits against CBNA based on injuries allegedly suffered due to, among other things, sexual, physical and/or emotional abuse by priests, other religious and/or other persons affiliated with CBNA;

WHEREAS, on March 1, 2008, CBNA filed a voluntary petition for reorganization under Chapter 11 of the "Bankruptcy Code" (as defined below in Section 1.1(b)) in the United States Bankruptcy Court for the District of Alaska, Case No. 08-00110-DMD (the "Reorganization Case");

WHEREAS, in the Reorganization Case, numerous individuals filed Sexual Abuse Proofs of Claim against CBNA based on injuries allegedly suffered due to, among other things, sexual, physical and/or emotional abuse by priests, other religious and/or other persons affiliated with CBNA (the "Abuse Claims");

Exhibit 1 to Motion for Approval

WHEREAS, the Parties dispute whether, and to what extent, the Policies may be applicable to and obligate Travelers to make any payments, whether for defense, indemnity, or otherwise, in connection with the Abuse Claims (the "Coverage Dispute");

WHEREAS, CBNA filed an adversary proceeding, Case No. 08-90019, against Travelers and other insurance companies in which CBNA, among other things, seeks a determination of whether and to what extent the Policies afford coverage in connection with the Abuse Claims (the "Coverage Action");

WHEREAS, on or about December 16, 2009, CBNA filed the Debtor's and the Official Committee of Unsecured Creditors' Third Amended and Restated Joint Plan of Reorganization for The Catholic Bishop of Northern Alaska (the "Plan") and the Bankruptcy Court entered an order confirming the Plan on February 17, 2010 (the "Confirmation Order");

WHEREAS, pursuant to, among other provisions, Articles 13.4(a) and 17.9 of the Plan, as further modified by the Confirmation Order, CBNA assigned to the Settlement Trustee all of CBNA's rights against Travelers, including, inter alia, all claims, causes of action and enforceable rights of CBNA against Travelers including those arising from or related to the Coverage Action;

WHEREAS, pursuant to Article 17.7 of the Plan, as further modified by the Confirmation Order, the Settlement Trustee was substituted for CBNA as the plaintiff in the Coverage Action;

WHEREAS, pursuant to the Plan, certain "Tort Claimants" (as defined below in Section 1.1(x)) assigned their Abuse Claims to the Settlement Trustee (the "Assigned Abuse Claims");

WHEREAS, pursuant to Articles 2.136 and 24 of the Plan, the Bankruptcy Court retained jurisdiction to approve a settlement of all claims and rights of CBNA and the Settlement Trust against Travelers and under the policies issued to CBNA by Travelers;

Exhibit 1 to Motion for Approval                2

WHEREAS, the Parties, without any admission of liability or concession of the validity of the positions or arguments advanced by each other, now wish to fully and finally compromise, settle, and resolve any and all disputes between and among them, including the Coverage Dispute;

WHEREAS, through this Agreement, the Parties seek to: (1) provide Travelers with the broadest possible release with respect to the Policies, (2) designate Travelers as a Settling Insurer under the Plan, and (3) provide that Travelers shall have no further obligations with respect to the Policies;

WHEREAS, as part of the compromise and resolution of the disputes between and among them, the Parties wish to effect a sale of the Policies pursuant to section 363 of the Bankruptcy Code;

WHEREAS, each of the Parties has received the advice of counsel in the preparation, drafting and execution of this Agreement, which was negotiated at arm's length; and

NOW, THEREFORE, in consideration of the foregoing recitals and of the mutual covenants contained herein, the sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, subject to the approval of the Bankruptcy Court, the Parties hereby agree as follows:

## I.    DEFINITIONS AND CONSTRUCTION

1.1    As used in this Agreement, the following terms shall have the meanings set forth below.  Terms not defined below shall have the meanings given to them in the Bankruptcy Code or the Plan.

(a)    "Approval Order" means an order in substantially the form attached hereto as Exhibit 1, with only such modifications as are mutually acceptable to CBNA, the Settlement

Exhibit 1 to Motion for Approval          3

Trustee, and Travelers, entered by the Bankruptcy Court under Sections 363 and/or 105 of the Bankruptcy Code and Bankruptcy Rule 9019 and/or under such other provisions as the Bankruptcy Court may order, approving this Agreement, designating Travelers as a Settling Insurer (as defined in the Plan) and authorizing the Parties to undertake the settlement and the transactions contemplated by this Agreement.

(b)    "Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended from time to time.

(c)    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Alaska and any other court in which the Reorganization Case may be pending or which has jurisdiction over the Reorganization Case.

(d)    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

(e)    "Bar Date" means December 2, 2008, the deadline set by the Bankruptcy Court to file a proof of claim in order to be considered for purposes of distribution under the Plan.

(f)    "CBNA" means the Catholic Bishop of Northern Alaska, an Alaska religious corporation sole, as well as all of its past, present, and future affiliates, associated corporations and entities, employees, officers, directors, shareholders, principals, agents, attorneys, representatives, predecessors, successors and assigns.

(g)    "Claim" means any of the following: (1) "Claim" as that term is defined in section 101(5) of the Bankruptcy Code; (2) demand, or (3) any other claim, whether past, present or future, known or unknown, asserted or unasserted, anticipated or unanticipated, accrued or unaccrued, foreseen or unforeseen, fixed or contingent, direct or indirect, and whether in law, equity or otherwise (including any claim (a) arising out of, related to, or involving Tort

Exhibit 1 to Motion for Approval                4

Claims and/or Future Tort Claims; (b) for any form of damages, indemnity or defense obligations, insurance premiums (whether retrospectively rated or otherwise), deductibles, self-insured retentions, costs, expenses, interest, contribution or subrogation; (c) pursuant to or under a contract, other agreement, promise, representation or warranty; or (d) pursuant to any direct action or statutory or regulatory right of action, assertion of right, complaint, cross-complaint, counterclaim, affirmative defense, writ, demand, inquiry, request, suit, lawsuit, liability, action, cause of action, administrative proceeding, governmental action, order, judgment, settlement, lien, loss, cost or expense).

(h)     "Effective Date" means the date on which this Agreement becomes effective, which shall be the day upon which each of the Parties has executed this Agreement and delivered evidence of that execution, through delivery of an executed signature page, to the other Parties.

(i)     "Extra-Contractual Claim" means any Claim against Travelers, seeking any type of relief, including compensatory, exemplary or punitive damages, or attorneys' fees, interest, costs or any other type of relief, based upon any theory of alleged bad faith; failure to provide insurance coverage under any of the Policies; failure or refusal to compromise and settle any Claim insured under any of the Policies; failure to act in good faith; violation of any covenant or duty of good faith and fair dealing; violation of any unfair claims practices act or similar statute, regulation or code; any type of alleged misconduct; or any other act or omission of any type for which the claimant seeks relief other than coverage or benefits under an insurance policy. Extra-Contractual Claims include any Claim arising out of or relating to: (1) Travelers' handling of any Party's request for insurance coverage for any Claim, including any Tort Claim or Future Tort Claim; (2) the conduct of the Parties arising out of or relating to the litigation of

Exhibit 1 to Motion for Approval                5

the Coverage Action; and (3) the conduct of the Parties with respect to the negotiation of this Agreement.

(j)    "Final Order" means an order, judgment or other decree (including any modification or amendment thereof) that remains in effect and has not been reversed, withdrawn, vacated or stayed, and as to which the time to appeal or seek review, rehearing or writ of certiorari has expired and as to which no appeal or petition for review, reconsideration, rehearing or certiorari has been taken, or, if such an appeal has been taken, (a) it has been resolved and no longer remains pending, or (b) an appeal has been taken timely but such order has not been stayed and the Settlement Trustee and Travelers have mutually agreed in writing that the order from which such appeal is taken should be deemed to be a Final Order within the meaning of this Agreement.

(k)    "Future Claims Representative" means Michael Murphy, the person appointed by the Bankruptcy Court to act as the Future Claims Representative pursuant to the Order Approving Joint Nomination of Future Claims Representative entered on January 15, 2009 [Docket No. 341].

(l)    "Future Tort Claim Claimant" means an individual who has or contends he or she has the right to assert a Future Tort Claim.

(m)    "Future Tort Claims" means all Tort Claims that: (a) are neither timely filed nor deemed to be timely filed (e.g., due to excusable neglect); and (b) held by a claimant who reaches the age of eighteen (18) years on or after November 2, 2008 (the date which is thirty (30) days prior to the generally applicable Bar Date in the Reorganization Case); or (c) held by a claimant for whom the applicable Alaska tort claim statute of limitations, for any reason, has not expired or has been tolled as of November 2, 2008, as determined under applicable Alaska or

Exhibit 1 to Motion for Approval            6

federal law, but without regard to federal bankruptcy law; and (d) for which the proof of claim is submitted in accordance with the procedure set forth in the Plan.

(n)      "Insurance Coverage Claim" means any Claim for insurance coverage, whether for defense, indemnification, supplementary payments or other benefits under any of the Policies.

(o)      "Interests" includes all liens, Claims, encumbrances, interests, rights of refusal, security interests, pledges, judgments, demands, charges, defects, options, restrictions, and other rights of any nature or kind, whether at law or in equity.

(p)      "Other Releasing Parties" means any Person other than CBNA that is or may claim to be insured under the Policies or any one of them, including all parishes, churches, schools and other institutions within or affiliated with CBNA, as it may have been constituted from time to time, at any time prior to the Effective Date that are either: (1) located within the territorial limits of CBNA; or, (2) directly or indirectly under or subject to the supervision or control of CBNA, including those entities listed in Schedule 1.1(p) attached hereto, along with each of their past, present and future subsidiaries, affiliates, associated corporations and entities, employees, officers, directors, shareholders, principals, agents, attorneys, representatives predecessors, successors and assigns.

(q)      "Party" means any one of the Parties.

(r)      "Person" means an individual, any corporation, including a corporation sole, a partnership, an association, a limited liability company, a proprietorship, joint venture, a trust, executor, legal representative, or any other entity or organization, as well as any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof.

Exhibit 1 to Motion for Approval                    7

(s)    "Policies" means all policies or contracts of insurance, known or unknown, issued or allegedly issued by Travelers to CBNA or any of the Other Releasing Parties under which CBNA or any of the Other Releasing Parties is or may claim to be an insured, named insured, person insured, additional insured, additional person insured, or otherwise entitled to any coverage or benefits under any such insurance policies, including the following: Commercial General Liability Policy No. 05 ACM 5257103, with an effective period of April 15, 1988 to April 15, 1989; Commercial General Liability Policy No. 05 ACM 5488559, with an effective period of April 15, 1989 to July 1, 1989; Commercial General Liability Policy No. 05 ACM 5489056, with an effective period of July 1, 1989 to July 1, 1990; Commercial Excess Liability (Umbrella) Policy, No. XS 546692, with an effective period of April 15, 1988 to April 15, 1989; and Commercial Excess Liability (Umbrella) Policy, No. XS 587476, with an effective period of April 15, 1989 to July 1, 1990.

(t)    "Settlement Amount" means the payment to be made by Travelers pursuant to Section 2.1 of this Agreement.

(u)    "Settlement Trustee" means Robert L. Berger, the trustee of the Settlement Trust appointed by the Bankruptcy Court in the Confirmation Order.

(v)    "Settlement Trust" means the trust created pursuant to Section 13.1 of the Plan to satisfy Tort Claims and Future Tort Claims.

(w)    "Tort Claim" means any and all Claims, demands, suits, causes of action, proceedings or any other rights or asserted rights to monetary and/or other relief, including the Abuse Claims and any Claims, demands, suits, or causes of action: (i) for bodily injuries or personal injuries, including emotional distress; (ii) for damages, including punitive damages; (iii) for attorneys' fees and other expenses, fees or costs; and (iv) for any equitable remedy,

Exhibit 1 to Motion for Approval                8

heretofore, now or hereafter asserted against CBNA, any Other Releasing Party or Travelers, whether or not reduced to judgment, based upon or in any manner arising from or related to: (a) any theory or assertions of direct or derivative liability whatsoever, for bodily injury, personal injuries, or any other injury or damages caused or alleged to have been caused in whole or in part by, or later attributed to, actual or alleged acts of any type of physical or sexual abuse, sexual conduct or misconduct, indecent assault and/or battery, molestation, rape, licentious behavior, undue familiarity, pedophilia, ephebophilia, inappropriate touching, sexually-related physical, psychological or emotional harm, or other misconduct of a sexual or prurient nature, and/or any other actual or alleged conduct constituting sexual abuse or childhood sexual abuse (including claims for loss-of-consortium, loss-of-society or loss-of-companionship, claims of vicarious liability or respondeat superior, claims of negligent supervision, hiring, training, treatment, retention or investigation, and claims of a failure to warn, report, disclose or mitigate and any other tortious acts or omissions, and any other legal theories); or (b) the processing, adjustment, defense, settlement, payment, negotiation or handling of any Claims, demands, suits, proceedings or causes of action based upon or relating in any way to Claims made as a result of any alleged abuse or other Tort Claim asserted by a Tort Claimant.

(x)     "Tort Claimant" means a Person who asserts a Tort Claim.

(y)     "Travelers" means Travelers Casualty and Surety Company (formerly known as Aenta Casualty and Surety Company) and each of its past, present, and future subsidiaries, parents, affiliates, associated corporations and entities, employees, officers, directors, shareholders, principals, parents, agents, attorneys, representatives, predecessors, successors and assigns.

1.2     The following rules of construction shall apply to this Agreement:

Exhibit 1 to Motion for Approval          9

(a)     Unless the context of this Agreement otherwise requires, (1) words of any gender include each other gender; (2) words using the singular or plural number also include the plural or singular number, respectively; (3) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this entire Agreement; (4) the words "include," "includes" or "including" shall be deemed to be followed by the words "without limitation;" and (5) the word "or" shall be disjunctive but not exclusive;

(b)     References to agreements and other documents shall be deemed to include all subsequent amendments and other modifications thereto;

(c)     References to statutes shall include all regulations promulgated thereunder and references to statutes or regulations shall be construed as including all statutory and regulatory provisions consolidating, amending or replacing the statute or regulation;

(d)     Capitalized terms not defined in this Agreement shall have the meaning ascribed to them by the Bankruptcy Code;

(e)     The wording of this Agreement was reviewed by legal counsel for each of the Parties and each of them had sufficient opportunities to propose and negotiate changes prior to its execution. None of the Parties will be entitled to have any wording of this Agreement presumptively construed against the other based on any contention as to which of the Parties drafted the language in question or which Party is an insurer.

## II.    PAYMENT OF SETTLEMENT AMOUNT

2.1     Subject to all of the terms of this Agreement, in full and final settlement of all responsibilities under and arising out of the Policies, and in consideration of the sale of the Policies to Travelers free and clear of all Interests of any Person, and expressly subject to fulfillment of all Conditions to Payment identified in Section 3 below, Travelers shall pay

Exhibit 1 to Motion for Approval                10

directly to the Settlement Trustee, pursuant to the wiring instructions set forth in Schedule 2.1 attached hereto, the sum of One Million Five Hundred Thousand Dollars ($1,500,000.00) within ten (10) calendar days after the Conditions to Payment described herein have been fulfilled.

2.2    The Parties expressly agree that the Settlement Amount is the total amount Travelers is obligated to pay on account of any and all Claims of any kind made under or relating to the Policies (including the Tort Claims) or with respect to Extra-Contractual Claims; that under no circumstance will Travelers ever be obligated to make any additional payments to anyone in connection with the Policies, including any amounts allegedly owed for Extra-Contractual Claims or Future Tort Claims; and that all limits of liability of the Policies, including all per person, per occurrence and aggregate limits, shall be deemed fully and properly exhausted. The Parties further agree that the Settlement Amount is the full purchase price of the Policies, and that, upon payment of the Settlement Amount, Travelers shall be deemed to own the Policies free and clear of all Interests of any Person.

2.3    Neither CBNA, nor the Other Releasing Parties, shall be obligated to make any type of self-insured retention or deductible payment to Travelers.

## III.    CONDITIONS TO PAYMENT

3.1    The obligation to pay the Settlement Amount in Section 2.1 above is expressly conditioned on, and payment need not be made unless and until, ten (10) calendar days after the Approval Order becomes a Final Order (the "Conditions to Payment").

3.2    Approval Order. Not later than seven (7) days after the Effective Date, the Settlement Trustee shall file a motion requesting the Bankruptcy Court to enter the Approval Order. CBNA and the Settlement Trustee shall use their best efforts to obtain entry of the Approval Order. Such best efforts shall include (a) supporting entry of the Approval Order

Exhibit 1 to Motion for Approval                11

during all discussions with claimants, their attorneys, guardians *ad litem,* and the Future Claims Representative, (b) filing a written response in the event any objections to the motion seeking the Approval Order are filed with the Bankruptcy Court, and (c) taking all reasonable steps to defend against any appeal, petition, motion or other challenge to the Bankruptcy Court's entry of the Approval Order.

3.2.1   Written notice that the Settlement Trustee is seeking entry of the Approval Order shall be provided to all creditors, all Persons who have filed notices of appearance in the Reorganization Case, and all entities known to have provided general liability insurance to CBNA.   Notice of the Settlement Trustee's and CBNA's seeking entry of the Approval Order shall also be published one time in the Fairbanks Daily News & Miner, the Anchorage Daily News, the Delta Discovery and the Nome Nugget in a form and at a time agreed to by the Parties or as ordered by the Bankruptcy Court.

## IV.   **RELEASES**

4.1   From and after satisfaction of the Conditions to Payment, no Party shall commence against Travelers any action, suit or proceeding of any nature whatsoever with respect to any matter, conduct, transaction, occurrence, fact or other circumstance alleged in, arising out of, connected with or in any way relating to the Policies, any Claim, Insurance Coverage Claim, or Extra-Contractual Claim, whether such action, suit or proceeding is based on a right currently possessed or acquired in the future.

4.2   Subject to satisfaction of the Conditions to Payment, and without any further action by the Parties, CBNA, the Settlement Trustee, the Settlement Trust, and the Other Releasing Parties, on the one hand, and Travelers, on the other hand, each hereby fully, finally, and completely remises, releases, acquits and forever discharges, as of the Effective Date, the

Exhibit 1 to Motion for Approval          12

other from any and all past, present or future Claims, including Future Tort Claims, Insurance Coverage Claims, Extra-Contractual Claims, Assigned Abuse Claims, Claims that might be assigned to a Party in the future, and all Claims arising out of or relating to the Reorganization Case and the Coverage Action, in connection with, or arising out of or relating to, in any manner or fashion, the Policies, which the Parties agree have been performed fully and are deemed exhausted by payment of the Settlement Amount.

4.3    The Parties acknowledge and agree that these releases comply with the Bankruptcy Code and applicable Alaska law. The Parties acknowledge and agree that this Agreement in no way voids or annuls the Policies, or attempts to void or annul the Policies, which have been fully performed by payment of the Settlement Amount.

4.4    If, contrary to the Parties' specific intent, any Claims released pursuant to Section 4.2 hereof, including Insurance Coverage Claims, Extra-Contractual Claims, and Assigned Abuse Claims, are deemed to survive this Agreement, even though they are encompassed by the terms of the release set forth in this Section IV of this Agreement, the Parties hereby forever, expressly, and irrevocably waive entitlement to and agree and covenant not to assert any and all such Claims.

4.5    The releases set forth in this Section IV shall not apply to or have any effect on Travelers' right to any Claim for reinsurance in connection with the Policies.

4.6    Nothing in this Section IV is intended to, nor shall be construed to, release, waive, relinquish, or otherwise affect the Parties' rights and obligations under this Agreement.

Exhibit 1 to Motion for Approval    13

## V.    REPRESENTATIONS AND WARRANTIES OF THE PARTIES

5.1    Each of the Parties separately represents and warrants as follows:

(a)    To the extent it is a corporation, including a corporation sole, or other legal entity, it has the requisite power and authority to enter into this Agreement and to perform the obligations contemplated by this Agreement, subject only to approval of the Bankruptcy Court;

(b)    Subject to entry of the Approval Order as a Final Order, the execution and delivery of, and the performance of the obligations contemplated by this Agreement have been approved by duly authorized representatives of the Party, and by all other necessary representatives of the Party;

(c)    Each Party has expressly authorized its undersigned representative to execute this Agreement on the Party's behalf as its duly authorized agent; and

(d)    This Agreement has been thoroughly negotiated and analyzed by its counsel and has been executed and delivered in good faith, pursuant to arm's length negotiations, and for good and valuable consideration.

5.2    The Person(s) executing this Agreement on behalf of the Other Releasing Parties represents and warrants that he/she has received written direction and authority from the Other Releasing Parties to execute this Agreement on their behalf and to provide the releases identified in Section IV above on behalf of each of the Other Releasing Parties.

Exhibit 1 to Motion for Approval                    14

## VI.    ACTIONS INVOLVING THIRD PARTIES

6.1    For purposes of supporting the releases granted in Section IV and the extinguishment of any and all rights under the Policies resulting from the purchase and sale thereof contemplated by this Agreement, CBNA, the Settlement Trustee, the Settlement Trust and the Other Releasing Parties hereby agree as follows with respect to any Claim against them:

(a)    they will not seek to obtain payment from any other insurance company of any amount that may be attributable or allocable to Travelers; and

(b)    in the event that any insurer of CBNA obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from Travelers as a result of a claim for contribution, subrogation, indemnification or other similar claim against Travelers for Travelers' alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation of Travelers for any Claims released pursuant to this Agreement, CBNA and the Settlement Trustee, as applicable, shall voluntarily reduce any judgment or Claim against, or settlement with, such other insurer(s) to the extent necessary to eliminate such contribution, subrogation or indemnification claims against Travelers.    To ensure that the reduction contemplated by Section 6.1(b)(ii) is accomplished, Travelers shall be entitled to assert this Section as a defense to any action against it for any such portion of the judgment or Claim and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Travelers from any liability for the judgment or Claim.

6.2    Travelers shall not seek to recover all or any portion of the Settlement Amount from any other insurer of CBNA, unless that other insurer first seeks contribution, subrogation, indemnification or similar relief from Travelers.    CBNA and the Settlement Trustee shall use their reasonable best efforts to obtain from all insurers with which either of them settles

Exhibit 1 to Motion for Approval                    15

after the Effective Date agreements similar to those contained in this Section 6.2; provided, however, that the failure of CBNA and/or the Settlement Trustee, despite its reasonable best efforts, to obtain such an agreement from any insurer with which it settles will not be a basis to terminate this Agreement or excuse Travelers from performing its obligations hereunder, including payment of the Settlement Amount.

6.3    Travelers shall be designated as and shall have all of the rights, interests, and benefits of a Settling Insurer under the Plan and Confirmation Order, including the channeling injunctions and other rights, benefits and interests set forth in Article 21 of the Third Amended Plan.

## VII.    DISMISSAL OF COVERAGE ACTION.

As soon as practicable after the Approval Order and Confirmation Order become Final Orders, the Settlement Trustee shall move jointly with Travelers for an order dismissing Travelers from the Coverage Action with prejudice and without costs or fees to either party (the "Dismissal Order").

## VIII.    MISCELLANEOUS

8.1    Each Party agrees to take such steps and to execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Agreement and to preserve its validity and enforceability. In the event that any action or proceeding of any type whatsoever is commenced or prosecuted by any Person not a Party hereto to invalidate, interpret, or prevent the validation, enforcement, or carrying out of all or any of the provisions of this Agreement, the Parties mutually agree, represent, warrant, and covenant to cooperate fully in opposing such action or proceeding. The obligations of the Settlement Trustee under this

Exhibit 1 to Motion for Approval                16

Section are an obligation of the Settlement Trust, and not the Settlement Trustee, individually, and shall not survive the termination of the Settlement Trust.

8.2     CBNA and the Settlement Trustee shall cooperate with Travelers and its representatives in connection with the Approval Order, the Dismissal Order, the Coverage Action, and the Reorganization Case in connection therewith.  Such cooperation shall include consulting with Travelers at its request concerning the status of proceedings and providing Travelers with copies of requested pleadings, notices, proposed orders and other documents relating to such proceedings as soon as reasonably practicable prior to any submission thereof to the Bankruptcy Court; provided, however, that nothing contained in this Section shall obligate CBNA or the Settlement Trustee to provide to Travelers any information that is otherwise subject to the attorney-client or work product privileges but not subject to a joint defense or common interest privilege among CBNA, the Settlement Trustee and Travelers.

8.3     This Agreement constitutes a single integrated written contract that expresses the entire agreement and understanding among the Parties.  Except as otherwise expressly provided, this Agreement supersedes all prior communications, settlements, and understandings among the Parties and their representatives regarding the matters addressed by this Agreement.  Except as explicitly set forth in this Agreement, there are no representations, warranties, promises, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Agreement or alter or supplement its terms. Any statements, promises, or inducements, whether made by any party or any agents of any party, that are not contained in this Agreement shall not be valid or binding. Any changes to this Agreement must be made in writing and with the consent of all Parties.

Exhibit 1 to Motion for Approval                    17

8.4     By entering into this Agreement, none of Parties has waived or shall be deemed to have waived any rights, obligations, or positions it or they have asserted or may in the future assert in connection with any matter or Person outside the scope of this Agreement. The Parties' rights under policies of insurance issued by insurers other than Travelers shall not be affected by this Agreement.  No part of this Agreement, its negotiation or performance may be used in any manner in any action, suit or proceeding by any Person as evidence of the rights, duties or obligations of any of the Parties with respect to matters or Persons outside the scope of this Agreement.  All actions taken and statements made by the Parties or by their representatives, relating to this Agreement or participation in this Agreement, including its development and implementation, shall be without prejudice or value as precedent, and shall not be used as a standard by which other matters may be judged.

8.5     This Agreement represents a compromise of disputed Claims and shall not be deemed an admission or concession by any Party of liability, culpability, or wrongdoing.  All negotiations leading up to this Agreement and all related discussions and negotiations shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions. Any evidence of the terms of this Agreement or negotiations or discussions associated with this Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or obligations of the Parties, except in (1) a proceeding to obtain the Approval Order or the Dismissal Order, (2) an action or proceeding to enforce the terms of this Agreement, or (3) any possible action or proceeding between Travelers and any of its reinsurers.  This Agreement shall not be used as evidence or in any other manner in any court or dispute resolution proceeding to

Exhibit 1 to Motion for Approval                18

create, prove, or interpret Travelers' obligations under the Policies to CBNA or to any other Person or any Claims of any Party against Travelers.

        8.6     Neither this Agreement nor the rights and obligations set forth herein shall be assigned without the prior written consent of the other Parties.

        8.7     Section titles and/or headings contained in this Agreement are included only for ease of reference and shall have no substantive effect.

        8.8     All notices, demands, or other communication to be provided pursuant to this Agreement shall be in writing and sent by facsimile or by Federal Express or other overnight delivery service, costs prepaid, to the Parties at the addresses set forth below, or to such other person or address as any of them may designate in writing from time to time:

If to Travelers:

General Counsel
Travelers Casualty and Surety Company
One Tower Square
Hartford, Connecticut 06183

With a copy to:

William T. Corbett, Jr., Esq.
Michael P. Pompeo, Esq.
Drinker Biddle & Reath LLP
500 Campus Drive
Florham Park, New Jersey 07932

If to CBNA:

Robert Hannon
Chancellor
Catholic Bishop of Northern Alaska
1316 Peger Road
Fairbanks, AK 99709

With a copy to:

Kasey C. Nye, Esq.

Exhibit 1 to Motion for Approval      19

Quarles & Brady LLP
One South Church, Suite 1700
Tucson, AZ 85701

If to Settlement Trustee
Mr. Robert Berger
Settlement Trustee
c/o James Stang
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100

and with a copy to:

Paul Sievers
Manly & Stewart
4220 Von Karman Avenue
Suite 200
Newport, California 92660

8.9    This Agreement may be executed in multiple counterparts, all of which together shall constitute one and the same instrument. This Agreement may be executed and delivered by facsimile, which facsimile counterparts shall be deemed to be originals.

8.10    The Parties agree that nothing contained in this Agreement shall be deemed or construed to constitute (1) an admission by Travelers that CBNA, the Settlement Trustee, the Settlement Trustee, the Other Releasing Parties, or any other Person was or is entitled to any insurance coverage under the Policies or as to the validity of any of the positions that have been or could have been asserted by CBNA or the Settlement Trustee, (2) an admission by CBNA or the Settlement Trustee as to the validity of any of the positions or defenses to coverage that have been or could have been asserted by Travelers or any Claims that have been or could have been asserted by CBNA or the Settlement Trustee against Travelers, or (3) an admission by CBNA, the Settlement Trustee or Travelers of any liability whatsoever with respect to any of the Tort Claims.

Exhibit 1 to Motion for Approval          20

8.11    All of the entities included in the definition of Travelers are intended beneficiaries of this Agreement.  The Parties agree that, except as set forth in the prior sentence or otherwise set forth in this Agreement, there are no third-party beneficiaries of this Agreement.

8.12    No Party shall make any public statements or disclosures (i) regarding any other Party's rationale or motivation for negotiating or entering into the settlement, or (ii) asserting or implying in any way that any other party acted improperly or in violation of any duty or obligation, express or implied, in its handling of or involvement in the Tort Claims, the resolution of the Tort Claims, or CBNA's claim for insurance coverage in connection with the Tort Claims.

8.13    Except as otherwise provided in this Agreement, each Party shall be responsible for their own fees and costs incurred in conjunction with the Reorganization Case, the Coverage Action or this Agreement.

8.14    Nothing in this Agreement, including but not limited to the releases granted in Section IV, shall be deemed to benefit the Catholic Mutual Relief Society of America, and/or any of its predecessors, successors, affiliates and/or assigns.

## IX.    THE SOCIETY OF JESUS, OREGON PROVINCE, THE DIOCESE OF JUNEAU, AND THE ARCHDIOCESE OF ANCHORAGE

Notwithstanding anything in this Agreement that could be read to the contrary, nothing in this Agreement shall affect the rights, if any, of the Society of Jesus, Oregon Province, the Juneau Diocese, or the Anchorage Archdiocese under the Policies.

Exhibit 1 to Motion for Approval                21

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of CBNA (as defined herein)**

By: _+ Donald J Kettler_

Name: _Donald J. Kettler_

Title: _Bishop_

Date: _8/25/10_

Witness: _Geraldine M. Gaubela_

22

Exhibit 1 to Motion for Approval

**On behalf of Travelers (as defined herein)**

By: Edward M. Zawitosk

Name: Edward M. Zawitosky

Title: 2nd V.P. Claims

Date: 8/11/2010

Witness: Linda Foran

Exhibit 1 to Motion for Approval                23

**On behalf of the Settlement Trust (as defined herein)**

By: _____

Name: _ROBERT L. BERGER_

Title: _TRUSTEE of the SETTLEMENT TRUST_

Date: _9/02/10_

Witness: _Josephine Berger_

Exhibit 1 to Motion for Approval

24

**On behalf of the Settlement Trustee (as defined herein)**

By: _____

Name: ROBERT L. BERGER

Title: TRUSTEE OF THE SETTLEMENT TRUST

Date: 9/2/10

Witness: Josephine Berger

Exhibit 1 to Motion for Approval

25

**On behalf of the Other Releasing Parties (as defined herein)**

By: _John B. Martinek_

Name: _JOHN B. MARTINEK_

Title: _Co-CHAIR CATHOLIC CHURCH COMMUNITIES OF N. AK._

Date: _9-7-2010_

Witness: _Claire Wingfield_

Exhibit 1 to Motion for Approval

# <u>EXHIBIT 1</u>

Exhibit 1 to Motion for Approval

**<u>EXHIBIT 1</u>**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ALASKA

|  |  |
|---|---|
| In re: | Case No. 08-00110-DMD |
| THE CATHOLIC BISHOP OF NORTHERN ALASKA, an Alaska religious corporation sole, | (Chapter 11) |
| Debtor. | |

## ORDER APPROVING SETTLEMENT AGREEMENT AMONG THE DEBTOR, SETTLEMENT TRUSTEE, OTHER RELEASING PARTIES AND TRAVELERS <u>INCLUDING THE SALE OF INSURANCE POLICIES</u>

This matter came before the Court pursuant to the Motion for Approval of Settlement Agreement (the "Motion") in the above-captioned Chapter 11 reorganization case (the "Reorganization Case") regarding the Settlement Agreement and Release between, on the one hand, the Catholic Bishop of Northern Alaska, the debtor and debtor-in-possession ("CBNA" or the "Debtor"), Robert L. Berger, the duly appointed trustee of the Settlement Trust[1] (the "Settlement Trustee") and the Other Releasing Parties and, on the one hand, Travelers. Pursuant to the Motion, CBNA and the Settlement Trustee seek the entry of an order pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002, 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) authorizing CBNA and the Settlement Trustee to enter into a compromise and settlement with Travelers pursuant to which CBNA and the Settlement Trustee will release any and all Claims, including without limitation Tort Claims, Future Tort Claims, Extra-Contractual Claims,

---

[1] Capitalized terms that are not otherwise defined in this Order have the same meaning as defined in the Agreement.

Exhibit 1 to Motion for Approval

## EXHIBIT 1

Insurance Coverage Claims, and all Claims relating to or arising out of the Reorganization Case that they may have now or in the future may have against Travelers arising out of, relating to or in any way connected with the Policies; (ii) authorizing the sale of the Policies pursuant to the terms and conditions of that Settlement Agreement and Release, dated August ___, 2010, between CBNA, the Settlement Trustee and the Other Releasing Parties, as sellers, and Travelers, as purchaser, a copy of which is annexed to the Motion as Exhibit 1 and incorporated by reference (the "Agreement"), and in consideration of the sale of the Policies to Travelers free and clear of all Interests of any Person (as defined in the Agreement), each of which will attach with the same validity and priority to the proceeds of the sale; (iii) approving the Agreement and each of its terms; and (iv) finding that the Agreement complies with the Bankruptcy Code and applicable law; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334, and consideration of the Motion and the relief requested therein, and any objections and responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearances of all interested parties and all objections to the Motion and responses thereto, if any, having been duly noted in the record of the hearing on the Motion (the "Hearing"); and upon the record of the Hearing, the Motion and any objections and responses; and after due deliberation and sufficient cause appearing therefor, the Court hereby makes the following:

Exhibit 1 to Motion for Approval                    2

**EXHIBIT 1**

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**Jurisdiction, Final Order and Statutory Predicates**

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.     To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

D.     This Order constitutes a final and immediately appealable order within the meaning of 28 U.S.C. § 158(a).

E.     The statutory predicates for the relief sought in the Motion are 11 U.S.C. §§ 105(a) and 363 and Fed. R. Bankr. P. 2002, 6004 and 9019.

**Retention of Jurisdiction**

F.     It is necessary and appropriate for the Court to retain jurisdiction to, among other things, interpret and enforce the terms and provisions of this Order and the Agreement, and to adjudicate, if necessary, any and all disputes arising under or relating in any way to, or affecting, any of the transactions contemplated under the Agreement.  Such jurisdiction shall be retained even if the case is closed and the case may be reopened for such purpose.

**Notice of the Motion**

G.     The Settlement Trustee and CBNA have provided due and adequate notice of the Motion, the Hearing, the Agreement and the subject matter thereof to the Other Releasing Parties, all

Exhibit 1 to Motion for Approval                    3

**EXHIBIT 1**

known claimants, all known persons and entities holding or asserting an Interest in the Policies, all government agencies required to receive notice of proceedings under the Bankruptcy Rules, all persons who have filed notices of appearance in the Reorganization Case, and all entities known to have provided general liability insurance to CBNA pursuant to sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004. CBNA and the Settlement Trustee have provided adequate notice to all other parties-in-interest by publication in Fairbanks, the YK Region, Nome, and Anchorage newspapers of general circulation. No other or further notice is necessary. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all known claimants and all parties-in-interest.

**Sound Business Judgment and Reasonableness**

H.      The relief requested in the Motion is in the best interests of CBNA, its creditors, the Settlement Trust, the holders of all Claims, including the holders of Tort Claims, holders of Future Tort Claims and other parties-in-interest. CBNA and the Settlement Trustee have demonstrated good, sufficient and sound business purposes, cause and justifications for the relief requested in the Motion and the approval of the transaction contemplated thereby. The settlement and compromise with Travelers embodied in the Agreement, including without limitation, the sale of the Policies and the release of claims as set forth therein are within the reasonable range of litigation outcomes if CBNA, the Settlement Trustee and Other Releasing Parties were to litigate the matters resolved pursuant to this Order and represent fair and reasonable consideration for the sale of the Policies and release of claims as set forth therein.

**Good Faith of Insurance Policy Purchaser**

I.      The Agreement was negotiated and proposed, and has been entered into by the parties, in good faith, from arm's length bargaining positions, and without fraud or collusion. Each party to

Exhibit 1 to Motion for Approval          4

**EXHIBIT 1**

the Agreement was represented by counsel.  The sale consideration and other consideration to be realized by CBNA and the Settlement Trustee pursuant to the Agreement is fair and reasonable. Travelers and each person comprising Travelers, is a good faith purchaser for value within the meaning of 11 U.S.C. § 363(m) and is entitled to the protection thereof and neither the Agreement nor the transaction contemplated thereby are subject to avoidance under 11 U.S.C. § 363(n).   Neither CBNA, nor the Settlement Trustee, nor the Other Releasing Parties nor Travelers nor any person comprising Travelers has engaged in any conduct that would cause or permit the Agreement, or the sale of the Policies, to be avoided under 11 U.S.C. § 363(n) or that would prevent the application of 11 U.S.C. § 363(m) or cause the application of 11 U.S.C. § 363(n).  Further, in the absence of a stay pending appeal, if any, Travelers will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in consummating the transactions contemplated by 11 U.S.C. § 363(n) at any time after entry of this Order.

**Satisfaction of Section 363 and Other Bankruptcy Code Requirements**

J.       The transactions contemplated by the Motion and the Agreement are in compliance with and satisfy all applicable provisions of the Bankruptcy Code, including without limitation 11 U.S.C. § 363.

K.       CBNA may sell the Policies free and clear of all Interests under 11 U.S.C. § 363(f) because, in each case, one or more of the criteria set forth in sections 11 U.S.C. § 363(f)(1)-(5) have been satisfied.   Those holders of Interests against any of the Policies and/or claims thereunder who did not object, or who withdrew their objections, to the Motion or the relief requested therein are deemed to have consented pursuant to 11 U.S.C. § 363(f)(2).  Each holder of an Interest or other lien in the Policies or claims thereunder can be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Interest as contemplated by 11 U.S.C. § 363(f)(5).

Exhibit 1 to Motion for Approval                   5

L.     The sale of the Policies provides claimants, including holders of Tort Claims and holders of Future Tort Claims, with adequate protection.  These claimants will be able to pursue their claims against the proceeds of the sale through the Settlement Trust that was created under the Debtor's and Official Committee of Unsecured Creditors' Third Amended And Restated Joint Plan of Reorganization for the Catholic Bishop of Northern Alaska (the "Plan").  Accordingly, the sale of the Policies free and clear of all Interests satisfies the statutory prerequisites of 11 U.S.C. § 363(f).

**Releases**

M.     There is an immediate and exigent need to consummate the transactions contemplated under the Agreement to fund the Settlement Trust and make distribution contemplated under the Plan.  In light of the terms of the Agreement, it is reasonable and appropriate for CBNA, the Settlement Trustee and Other Releasing Parties to provide the releases set forth in the Agreement.

**No Successor Liability**

N.     The transfer pursuant to the Agreement of the Policies does not and will not subject or expose Travelers or any of its affiliates, subsidiaries, successors, predecessors, shareholders, members, partners, directors, officers, managers, employees, insiders, agents, representatives and advisors, to any liability, Claim, cause of action or remedy by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, including, without limitation, any theory of tort, creditors' rights, equity, antitrust, environmental, successor or transferee liability, labor law, *de facto* merger, or substantial continuity.

O.     No common identity of officers or directors exists between Travelers and CBNA, the Settlement Trustee or the Other Releasing Parties.

Exhibit 1 to Motion for Approval                    6

# EXHIBIT 1

P.      Travelers is purchasing the Policies pursuant to the Agreement and this Order.  Travelers is not purchasing any other assets of CBNA or the Other Releasing Parties.  Travelers shall not have any responsibility or liability with respect to any of the other assets of CBNA or the Other Releasing Parties.

Q.      A sale of the Policies other than one free and clear of Interests would impact adversely on CBNA, the Settlement Trust, and creditors and would be of substantially less benefit to the estate of CBNA and the Settlement Trust.

**Supplemental Injunction**

R.      Issuing a supplemental injunction under 11 U.S.C. §§ 105(a) and 363 is essential to the reorganization of CBNA.  CBNA, the Settlement Trustee and Travelers have agreed that a supplemental injunction is a necessary prerequisite for their agreeing to the terms and conditions of the Agreement, and Travelers will not consummate the sale of the Policies in the absence of a supplemental injunction from this Court.

S.      The claimants, including the holders of the Tort Claims and holders of Future Tort Claims, are adequately protected in that they have the right to pursue their claims against the proceeds of the sale of the Policies with the same validity and priority as against the Policies.

For all of the foregoing and after due deliberation, **IT IS ORDERED, ADJUDGED, AND DECREED THAT**:

1.      The Motion is GRANTED and APPROVED in all respects.

2.      The Agreement and each of its terms and conditions are hereby approved.

3.      For the reasons set forth herein and on the record at the Hearing, all objections to the Motion and the relief requested therein and/or granted in this Order that have

Exhibit 1 to Motion for Approval                7

**EXHIBIT 1**

not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled on the merits.

      4.    CBNA and the Settlement Trustee are authorized, empowered and directed to enter into the Agreement, pursuant to 11 U.S.C. § 363(b) and other applicable provisions of the Bankruptcy Code, to sell, transfer and convey the Policies to Travelers in accordance with the terms and subject only to the conditions specified herein and in the Agreement.  Except as set forth herein, CBNA's and the Settlement Trustee's transfer of the Policies, in conjunction with the Other Releasing Parties' transfer of their Interests in the Policies pursuant to the Agreement, shall vest Travelers with all right, title, and Interest in and to the Policies, free and clear of all rights, claims and Interests, effective as of the payment of the Purchase Price (as defined below).

      5.    The terms of the Agreement are approved in their entirety, and this Order and the Agreement shall be binding upon CBNA, the Settlement Trustee, all creditors of CBNA, all Tort Claimants, all Future Tort Claimants, the Other Releasing Parties, and all other parties-in-interest and each of their successors and assigns.  Subject to the payment by Travelers to the Settlement Trustee of the consideration provided for in the Agreement, the sale of the Policies to Travelers shall constitute a legal, valid, and effective transfer of the Policies and shall vest Travelers with all right, title and Interest in and to the Policies free and clear of all rights, claims and Interests, as set forth herein and effective as of the payment of the Purchase Price.

      6.    The $1,500,000.00 cash purchase price (the "Purchase Price") under the Agreement shall be paid by Travelers as provided in the Agreement.

      7.    Notwithstanding anything in the Agreement or this Order to the contrary, nothing in the Agreement or this Order shall affect the rights and interests, if any, of the Society

**EXHIBIT 1**

of Jesus, Oregon Province, the Diocese of Juneau, or the Archdiocese of Anchorage under the Policies.

8.    The releases in the Agreement comply with the Bankruptcy Code and applicable Alaska law.  The Agreement in no way voids or annuls the Policies, or attempts to void or annul the Policies, which have been fully performed, with respect to CBNA, the Settlement Trustee and Other Releasing Parties.

9.    The sale of the Policies to Travelers under the Agreement will constitute transfers for reasonably equivalent value and fair consideration under the Bankruptcy Code and the laws of the State of Alaska.

10.    CBNA, the Settlement Trustee, the Other Releasing Parties and Travelers are each hereby authorized to take all actions and execute all documents and instruments that CBNA, the Settlement Trustee, the Other Releasing Parties and Travelers deem necessary or appropriate to implement and effectuate the transactions contemplated by the Agreement.

11.    Pursuant to 11 U.S.C. §§ 105(a) and 363(f) and subject to the consummation of the sale of the Policies as provided under the Agreement, the Policies shall be and hereby are transferred to Travelers, free and clear of (a) all Interests in the Policies and (b) any and all Claims, obligations, demands, debts, rights, contractual commitments, restrictions, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of the Reorganization Case, and whether imposed by agreement, understanding, law, equity or otherwise (including without limitation, Interests in the Policies that purport to give to any party a right or option to effect any forfeiture, modification or termination of the interest of the bankruptcy estate or Travelers, as the case may be, in the Policies).

Exhibit 1 to Motion for Approval                    9

**EXHIBIT 1**

12.     Pursuant to 11 U.S.C. §§ 105(a) and 363, any and all persons and entities who now hold or who may in the future hold Interests of any kind or nature (including, without limitation, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, tort claim holders and all others holding claims or interests of any kind or nature whatsoever) against CBNA, the Settlement Trust, the Settlement Trustee, the Other Releasing Parties, or the Policies are hereby forever barred, estopped and permanently enjoined from asserting such Interests against Travelers or any of its affiliates, stockholders, members, partners, parent entities, successors, assigns, officers, directors or employees, agents, representatives, and attorneys, or against the Policies.

13.     Any and all Interests in the Policies, shall be transferred, affixed, and attached to the Purchase Price proceeds of the sale, with the same validity, priority, force, and effect as such Interests had upon the Policies immediately prior to the consummation of the sale of the Policies.

14.     Travelers is a good faith purchaser of the Policies and is entitled to and is hereby granted all of the protections provided to a good faith purchaser under 11 U.S.C. § 363(m).   The transactions contemplated by the Agreement shall not be subject to avoidance under 11 U.S.C. § 363(n).   Each and every Person is hereby enjoined from commencing or continuing an action seeking relief under 11 U.S.C. § 363(n) with respect to Travelers.

15.     Travelers is not, and shall not be deemed to be, a successor to CBNA, the Settlement Trustee, the Settlement Trust, or the Other Releasing Parties by reason of any theory of law or equity or as a result of the consummation of the transactions contemplated in the Agreement or otherwise.   Travelers shall not assume any liabilities of CBNA, the Settlement Trust, the Settlement Trustee or the Other Releasing Parties.

Exhibit 1 to Motion for Approval                    10

16.     Pursuant to Fed. R. Bankr. P. 9019, the settlement and release of any and all duties, obligations, damages, costs, fees, deductibles, retentions, premiums, accountings, interest charges, payments, setoffs, debts, accounts, Insurance Coverage Claims, Tort Claims, Future Tort Claims, Extra-Contractual Claims, and Claims of every kind, nature and description, known or unknown, asserted or unasserted, arising or alleged to have arisen from the beginning of the world or which may hereafter arise until the end of time out of or in connection with the Policies (the "Released Claims") are hereby approved effective as set forth under the Agreement. All of the Released Claims are hereby dismissed and forever released effective as set forth under the Agreement.

17.     Travelers is a Settling Insurer (as such term is defined in the Plan) and shall be afforded (a) all of the rights, interests, and benefits of a Settling Insurer designated under the Plan and Confirmation Order as a Settling Insurer including, but not limited to, the channeling injunctions and other rights, benefits and interests set forth in Article 21 of the Plan, and (b) the releases contained in the Agreement and, pursuant to and subject to the conditions of the Agreement, Travelers shall be entitled to, upon entry of this Order, the protections provided by such designation and treatment without further order of this Court.

18.     The transfer of the Policies from CBNA, the Settlement Trustee, the Settlement Trust, and Other Releasing Parties to Travelers does not and will not subject CBNA, the Settlement Trustee, the Settlement Trust, the Other Releasing Parties or Travelers to any liability for a stamp tax or similar tax, including among other things, any transfer tax.

19.     This Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed under Fed. R. Bankr. P. 6004(g) or any other applicable provision.

Exhibit 1 to Motion for Approval                11

20.    This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of the Agreement and this Order in all respects and further to hear and determine any and all disputes between CBNA, the Settlement Trust, the Settlement Trustee and/or the Other Releasing Parties and/or Travelers, as the case may be, and any other Person; provided, however, that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the Agreement or this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon, and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.  In the event this case has been closed, there shall be a right to have this case reopened upon *ex parte* motion or application for such purposes as provided in this paragraph.

21.    The failure to specifically include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

22.    The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the Parties thereto, in a writing signed by both Parties, and in accordance with the terms thereof, without further order of the Court, provided such modification, amendment or supplement does not have a material adverse effect on CBNA's bankruptcy estate or the Settlement Trust.

23.    The provisions of this Order are nonseverable and mutually dependent.

24.    This Order shall inure to the benefit of Travelers, CBNA, the Settlement Trust, the Settlement Trustee, the Other Releasing Parties and their respective successors and assigns, and shall be binding upon CBNA, Settlement Trustee, Settlement Trust and the Other Releasing Parties.

Exhibit 1 to Motion for Approval                12

**<u>EXHIBIT 1</u>**

      25.    Each and every federal, state, and local governmental agency or department is hereby directed to accept for filing, recording or otherwise any and all documents and instruments necessary and appropriate to consummate and/or evidence the transactions contemplated by the Agreement and this Order.

Dated: _____, 2010

_____
United States Bankruptcy Judge

Exhibit 1 to Motion for Approval      13

# **SCHEDULE 1.1(p)**

Exhibit 1 to Motion for Approval

## Schedule 1.1(p)

Alakanuk-Saint Ignatius Catholic Church
Aniak- Saint Theresa Catholic Church
Barrow- Saint Patrick Catholic Church
Bethel- Immaculate Conception Catholic Church
Chefornak- Saint Catherine of Siena Catholic Church
Chevak- Sacred Heart Catholic Church
Delta Junction- Our Lady of Sorrows Catholic Church
Emmonak- Sacred Heart Catholic Church
Fairbanks- Immaculate Conception Catholic Church
Fairbanks- Sacred Heart Cathedral
Fairbanks- Saint Mark's University Parish
Fairbanks- Saint Raphael Catholic Church
Galena- Saint John Berchmans Catholic Church
Healy- Holy Mary of Guadalupe Catholic Church
Holy Cross- Holy Family Catholic Church
Hooper Bay- Little Flower of Jesus Catholic Church
Huslia- Saint Francis Regis Catholic Church
Kalskag- Immaculate Conception Catholic Church
Kaltag- Saint Teresa Catholic Church
Kotlik- Saint Joseph Catholic Church
Kotzebue- Saint Francis Xavier Catholic Church
Koyukuk- Saint Patrick Catholic Church
Little Diomede Island- Saint Jude Catholic Church
Marshall- Immaculate Heart of Mary Catholic Church
McGrath- Saint Michael Catholic Church
Mountain Village- Saint Lawrence Catholic Church
Nenana- Saint Theresa Catholic Church
Newtok- Holy Family Catholic Church
Nightmute- Our Lady of Perpetual Help Catholic Church
Nome- Saint Joseph Catholic Church
North Pole- Saint Nicholas Catholic Church
Nulato- Our Lady of the Snows Catholic Church
Nunam Iqua- Saint Peter Catholic Church
Pilot Station- Saint Charles Spinola Catholic Church
Ruby- Saint Peter in Chains Catholic Church
Russian Mission- Our Lady of Guadalupe Catholic Church
Saint Marys- Church of the Nativity Catholic Church
Saint Michael- Saint Michael Catholic Church
Scammon Bay- Blessed Sacrament Catholic Church
Stebbins- Saint Bernard Catholic Church
Tanana- Saint Aloysius Catholic Church
Teller- Saint Ann Catholic Church
Tok- Holy Rosary Catholic Church
Toksook Bay- Saint Peter the Fisherman Catholic Church
Tununak- Saint Joseph Catholic Church
Unalakleet- Church of the Holy Angels Catholic Church
Immaculate Conception Elementary School
Monroe Junior/Senior High School

Exhibit 1 to Motion for Approval

# **SCHEDULE 2.1**

Exhibit 1 to Motion for Approval

# *SCHEDULE 2.1*

### *WIRE INSTRUCTIONS*

ACCOUNT NAME:          Robert L. Berger, Settlement Trustee for
                       Catholic Bishop of Northern Alaska
                       Checking Account

ACCOUNT NUMBER:        011013851

NAME OF BANK:          Private Bank of California, Los Angeles Branch
                       10100 Santa Monica Blvd., Suite 2500
                       Los Angeles, CA 90067

BANK ROUTING NO:       122244139

Exhibit 1 to Motion for Approval